# EXHIBIT 3

**TABLE OF CONTENTS**

0520-01-23-.01 Purpose
0520-01-23-.02 Definitions
0520-01-23-.03 LEA Requirements
0520-01-23-.04 Reviewing Allegations of Noncompliance
0520-01-23-.05 Early Resolution

**0520-01-23-.01 PURPOSE.**

The purpose of this Chapter is to effectuate T.C.A. § 49-6-310.

*Authority*: T.C.A. § 49-1-201 and 49-6-310. *Administrative History:*


**0520-01-23-.02 DEFINITIONS.**

(1) "Commissioner" means the Commissioner of the Tennessee Department of Education.

(2) "Complaint" means a report of allegations of non-compliance with T.C.A. § 49-6-310 filed with the Department by a Reporting Party using the reporting form made available by the Department. Department personnel may assist a Reporting Party to fill out the reporting form if assistance is needed, or if the Reporting Party wishes to file a Complaint via phone.

(3) "Department" means the Tennessee Department of Education.

(4) "High School" means a public school or public charter school in which any combination of grades nine through twelve (9-12) are taught.

(5) "Interscholastic Athletic Activity or Event" means a sporting activity or sporting event involving two (2) or more schools, at least one (1) of which is a Middle School or a High School.

(6) "LEA" means a Tennessee local education agency and has the same meaning given in T.C.A. § 49-1-103(2).

(7) "Middle School" means a public school or public charter school in which any combination of grades five through eight (5-8) are taught.

(8) "Reporting Party" means a current student of a Tennessee LEA or public charter school, a parent or guardian of a current student of a Tennessee LEA or public charter school, or any Tennessee citizen who submits a Complaint alleging noncompliance with T.C.A. § 49-6-310(a) to the Tennessee Department of Education.

(9) "State Education Finance Funds" means the state school fund as defined in T.C.A. § 49-3-101(a) or funds appropriated or allocated from the state treasury for the operation and maintenance of the public schools or that may derive from any state taxes, the proceeds of which are devoted to public school purposes.

*Authority*: T.C.A. § 49-1-201 and 49-6-310. *Administrative History:*

**0520-01-23-.03  LEA REQUIREMENTS.**

(1) Each local board of education and each governing body of a public charter school shall:

   (a) Adopt and enforce a policy in compliance with T.C.A. § 49-6-310;

   (b) Require each Middle School and High School under its control to adopt written procedures to ensure proper implementation of T.C.A. § 49-6-310(a) and the policy adopted pursuant to T.C.A. § 49-6-310; and

   (c) Require annual reminders of T.C.A. § 49-6-310(a), the policy adopted pursuant to T.C.A. § 49-6-310, and the school procedures required by this Chapter be provided to all coaches and school and district administrators responsible for facilitating Interscholastic Athletic Activities and/or Events at Middle Schools and High Schools under its control.

(2) If a birth certificate provided by a student or the student's parent or legal guardian does not appear to be the student's original birth certificate or does not indicate the student's sex upon birth, then the student or the student's parent or legal guardian shall provide other evidence indicating the student's sex at the time of birth. Other evidence provided by the student or the student's parent or legal guardian to establish the student's sex at the time of birth shall only be provided with the prior written consent of the student's parent or legal guardian.

(3) Each LEA shall confirm that each Middle School and High School under its control is in compliance with T.C.A. § 49-6-310prior to submitting the annual LEA Compliance Report to the Department certifying the LEA's compliance with all education laws and State Board of Education ("State Board") rules.

**Authority**: T.C.A. § 49-1-201 and 49-6-310. **Administrative History:**

**0520-01-23-.04  REVIEWING ALLEGATIONS OF NONCOMPLIANCE.**

(1) The Department shall initiate a review of the allegation(s) included in the Complaint within ten (10) calendar days of receipt of the Complaint. The Department shall send a written notification of the review to the LEA in which the Complaint arose. The Department shall also notify the Reporting Party, that an investigation has been initiated and provide information regarding the procedural steps involved in the investigative process.

(2) As part of the review, the Department shall have the authority to:

   (a) Request any relevant evidence from the LEA, the Reporting Party, and/or any witness; and

   (b) Interview the Reporting Party and/or any other individual deemed necessary by the Department.

(3) No later than sixty (60) calendar days after initiating the review, the Department shall issue a written determination letter summarizing the findings of the review to the LEA from which the Complaint arose and to the Reporting Party. The sixty (60) calendar day timeline shall be stayed if the Department and the LEA from which the Complaint arose agree to enter into an early resolution agreement in accordance with the requirements of Rule 0520-01-23-.05 of this Chapter. Such notice shall be sent in compliance with the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. 1232g); T.C.A. § 10-7-504; the Data Accessibility, Transparency, and Accountability Act, compiled in Title 49, Chapter 1, Part 7; and all other relevant privacy laws. The sixty (60) calendar

        day timeline may only be extended if exceptional circumstances exist, and those circumstances are appropriately documented by the Department. If there is a need for an extension of the sixty (60) calendar day timeline, the Department shall notify the LEA in which the Complaint arose and the Reporting Party of this extension in writing.

(4) If the LEA is found to be non-compliant with T.C.A. § 49-6-310, the written determination letter shall include a notice of noncompliance. The notice of noncompliance shall include, at minimum, corrective action steps required for compliance and a deadline for completion of the corrective action steps. An LEA shall not be deemed non-compliant by the Department if the failure to comply is in response to a court or other legally binding order that prohibits the LEA from complying.

(5) If the Department determines that the LEA failed to complete the required corrective action steps by the deadline included in the notice of noncompliance, the Department shall send the LEA a letter of withholding stating that due to failure to complete the required corrective action steps by the established deadline, the Commissioner shall withhold a portion of the State Education Finance Funds that an LEA is otherwise eligible to receive. The Commissioner shall withhold the portion of the State Education Finance Funds scheduled to be distributed to the LEA in accordance with Table 1 set forth below until the LEA completes each of the required corrective action steps set forth in the notice of non-compliance. When the Commissioner determines that compliance is established, the amount of State Education Finance Funds that were withheld shall be disbursed to the LEA by the Department. The amount of state funds to be withheld by the Commissioner shall be determined as set forth in Table 1 below:

Table 1:

| | |
|---|---|
| First letter of withholding | 2% of annual State Education Finance Funds scheduled to be granted to the LEA |
| Second letter of withholding | 4% of annual State Education Finance Funds scheduled to be granted to the LEA |
| Third letter of withholding | 6% of annual State Education Finance Funds scheduled to be granted to the LEA |
| Fourth letter of withholding | 8% of annual State Education Finance Funds scheduled to be granted to the LEA |
| Fifth or more letter of withholding | 10% of annual State Education Finance Funds scheduled to be granted to the LEA |

(6) The letter of withholding shall state that the LEA has the right to request a contested case hearing regarding the Department's determination that the requirements of the corrective action plan have not been met by the established deadline. Any contested case hearing granted shall be conducted in accordance with the Tennessee Uniform Administrative Procedures Act at T.C.A. §§ 4-5-301 et. seq. and the Rules of the Tennessee Department of State Administrative Procedures Division, Chapter 1360-04-01. If the LEA chooses to request a contested case hearing, the LEA shall make such a request within thirty (30) calendar days of the Department issuing the letter of withholding.

**Authority**: *T.C.A. § 49-1-201 and 49-6-310.* **Administrative History**:


**0520-01-23-.05  EARLY RESOLUTION.**

(1) LEAs are encouraged to work collaboratively with the Department to resolve Complaints as quickly as possible. At any point after a Complaint has been received by the Department, but before a written determination letter has been issued by the Department, the LEA may propose early resolution of the allegations through an early resolution agreement.

(2) If early resolution is agreed to by the Department and LEA, the LEA shall prepare a written early resolution agreement to be submitted to the Department for review and approval. Entry into an early resolution agreement shall not constitute an admission that the LEA violated T.C.A. § 49-6-310 or this Chapter. The Department's review of the allegation(s) included in a Complaint shall be suspended upon entry into an early resolution agreement.

(3) An early resolution agreement shall include, but not be limited to:

   (a) A summary of the allegations contained in the Complaint; and

   (b) Any agreed upon terms and conditions of the early resolution agreement, including but not limited to, deadlines for the completion of required acts or steps, and dates for submission of reports and documentation to the Department verifying implementation.

(4) Once an early resolution agreement between the LEA and the Department is signed by both parties, the Department shall:

   (a) Monitor the implementation of the early resolution agreement to ensure the LEA complies with the terms;

   (b) Provide written notice to the LEA of any deficiencies in implementation and shall request immediate and appropriate action to address those deficiencies;

   (c) When necessary, require additions to or modifications of the early resolution agreement to address the failure of the LEA to fully implement the terms of original agreement; and

   (d) Provide written notice to the Reporting Party that the LEA and the Department have entered into an early resolution agreement, including the terms of the early resolution agreement. Such notice shall be sent in compliance with the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. 1232g); T.C.A. § 10-7-504; the Data Accessibility, Transparency, and Accountability Act, compiled in Title 49, Chapter 1, Part 7; and all other relevant privacy laws.

(5) When the Department determines that the LEA has fully implemented the terms and conditions of the early resolution agreement, the Department shall conclude the monitoring of the early resolution agreement by sending written notification to the LEA and the Reporting Party. Such notice shall be sent in compliance with the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. 1232g); T.C.A. § 10-7-504; the Data Accessibility, Transparency, and Accountability Act, compiled in Title 49, Chapter 1, Part 7; and all other relevant privacy laws.

(6) If an LEA fails to comply with the terms and conditions established in an early resolution agreement, the Department shall re-initiate the review of the Complaint submitted to the Department in accordance with Rule 0520-01-23-.04 of this Chapter.

**Authority**: *T.C.A. § 49-1-201 and 49-6-310.* **Administrative History:**