IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.E., by next friends and parents, SHELLEY ESQUIVEL and MARIO ESQUIVEL, <br><br> Plaintiff, <br><br> v. <br><br> BILL LEE, in his official capacity as Governor of Tennessee; et al., <br><br> KNOX COUNTY BOARD OF EDUCATION a/k/a KNOX COUNTY SCHOOL DISTRICT; et al., <br><br> Defendants. | No. 3:21-cv-00835 <br><br> Chief Judge Crenshaw <br><br> Magistrate Judge Newbern |

**REPLY IN SUPPORT OF
STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff's response confirms that this lawsuit is fundamentally an attempt to redefine basic terms of the English language. The General Assembly enacted the Gender in Athletics Law to clarify that the definition of "gender" for purposes of participation in public school interscholastic sports is "the student's sex at the time of the student's birth, as indicated on the student's original birth certificate." Tenn. Code Ann. § 49-6-310(a). State Defendants provided dictionary after dictionary from the time of the Fourteenth Amendment's ratification in 1868, the enactment of Title IX in 1972, and today all confirming that "sex" is the primary non-grammatical definition of "gender" and that "sex" refers to the biological binary based on the organization of reproductive systems that doctors observe at the time of a child's birth. Plaintiff responded with silence. Throughout this case, Plaintiff has not offered *any* alternative definition of "gender" or "sex" and simply insists that Plaintiff (whose sex is undisputedly female) has a male gender identity (not gender or sex). Gesturing only at this subjective, mutable, and infinitely varying self-perception approach to identity, Plaintiff has failed to provide "workable" definitions of gender and sex "through which" the State "could have met its educational goals, as" the General Assembly "understood and defined them." *Fisher v. Univ. of Texas at Austin*, 579 U.S. 365, 387-88 (2016).

Even if Plaintiff were to succeed in this suit, whether TSSAA would adopt Plaintiff's approach to gender and eligibility is unknown, and Plaintiff would still not be able to satisfy objective skill requirements for participation on the boys' golf team, so Plaintiff lacks standing.

I.  **Plaintiff Fails to Establish Equal-Protection and Title IX Claims Against the State.**

Plaintiff disclaims "challenging the decision to separate interscholastic golf teams" into two "sex-segregated team[s]," (Pl.'s Opp. at 2), and acknowledges that Title IX "allow[s] for sex-segregated sports teams" in situations, such as the one here, where selection is based upon competitive skill, (Pl.'s Opp. at 29). At the same time, it is logically impossible for sports teams

1

to be truly "sex-segregated" if the U.S. Constitution or Title IX somehow prohibits separation based on sex due to students' subjective gender identity. TSSAA rules create separate golf teams for only boys (the male sex) and for only girls (the female sex).[1] That is the very meaning of sex-segregating teams. Plaintiff, however, appears to want *some* members of the female sex to play on boys' teams, which means the boys' teams would no longer be limited to members of the male sex and thus would not be truly sex-segregated (limited only to members of the male sex).

And while Plaintiff's inability to demonstrate skill in golf means that there is less of a competitive parity concern from Plaintiff in particular competing on the boys' golf team, a law that applied only to girls' sports teams would itself be challenged on Equal Protection grounds for treating girls worse than boys.[2] There is no principled linguistic basis for forcing the State to craft definitions of the terms "gender" and "sex" that apply *only* to Plaintiff and *only* to boys' golf. Moreover, despite Plaintiff's attempt to cast the requested injunction as part of a mere as-applied challenge about the boys' golf team, Plaintiff's proposed injunction itself goes beyond the boys' golf team to *any* "boys' school sports team in Tennessee." (Pl.'s Mot. for Summ. J. at 5.)

Plus, "it is simply incorrect to assert that the inclusion of only a single" female student as a putative boy in boys' golf "would not significantly alter" the States' educational and clarity interests. *Green v. Miss USA*, 2022 WL 16628387, at *11 (9th Cir. Nov. 2, 2022) (ruling that a

---

[1] A "boy" is "a male child" with "male" meaning "of or belonging to the sex that begets young by fertilizing the female" because "male always refers to sex"; in contrast, a "girl" is "a female child" with "female" meaning "belonging to the sex that bears young or produces eggs." The Random House College Dictionary (1973). These are basic English definitions, not stereotypes.

[2] As a matter of fact, Plaintiff's counsel in this case—the American Civil Liberties Union Foundation—has *already* argued that an Idaho law that required sex-verification only for female sports was unconstitutional because it "contain[ed] no parallel provision for teams and sports designated for male students." *Hecox v. Little*, No. 1:20-cv-00184-DCN, Pls.' Memo. in Support of Mot. for Preliminary Inj., 2020 WL 6828997 (D. Idaho Apr. 30, 2020); *see Hecox v. Little*, 479 F. Supp. 3d 930, 985 (D. Idaho 2020) (allowing claim to proceed because the Idaho law "singl[es] out members of girls' and women's teams for sex verification").

beauty pageant did not need to allow a man to participate as a putative woman). If this Court requires the State to define even one student's gender based on gender identity rather than sex, then the statewide definition is undone, and the State has been stripped of control over its educational message. There is no way to split the baby without frustrating the State's important interests: either the State is allowed to define gender as sex or it is not.[3]

Rational-basis review applies to the Equal Protection claim. First, Plaintiff almost entirely ignores the litany of cases State Defendants cited where courts applied rational-basis review to challenges of the definitional contours of various classifications. The best Plaintiff can do is point to *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), (Pl.'s Opp. at 20), which does not examine the appropriate level of review for the challenged statute and thus is *not* inconsistent with the cases relied on by the State. *Vitolo* was a challenge to the federal government's "use of race and sex preferences when distributing" federal funds, not definitions of race or sex. 999 F.3d at 360, 364.[4]

---

[3] Plaintiff attempts to dismiss these as post hoc justifications for the Gender in Athletics Law. But State Defendants have consistently asserted that the prefatory clauses of the statute only provide *some* of the governmental interests. Since the State's first substantive filings—its summary judgment motion and memorandum in support of that motion—the State has asserted all four interests for the law, and all those interests are evident from the full text of the statute. *United State v. Virginia*, 518 U.S. 515 (1996), dealt with a unique admission policy of the Virginia Military Institute, not a state law that applied to all universities in the Commonwealth. Indeed, the Supreme Court emphasized in *Virginia* that the Virginia General Assembly "had repealed" all state laws that segregated schools by sex and expressed opposition to policies that did so. 518 U.S. at 538-40. In contrast, the Tennessee General Assembly has attempted to clarify the definition of "gender" and "sex" for *all* public interscholastic sports throughout Tennessee. And other education statutes have long recognized the importance of educating Tennessee students about the differences between the two sexes and their development. *See* Tenn. Code Ann. § 49-6-1301(11). State Defendants agree that granting L.E.'s injunction would not allow L.E. to use boys' facilities.

[4] Plaintiff's allegation of animus fares no better. Any definition includes or excludes some from the defined term; TSSAA decides whether to sex-segregate sports. After scouring the legislative record, Plaintiff points only to two legislators referencing the widely known verse Genesis 1:27 ("So God created man in his own image, in the image of God he created him; male and female he created them."). The Supreme Court "has long disfavored arguments based on alleged legislative motives," *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255-56 (2022), and that verse is the same one that inspired the Declaration of Independence's assertion that "all men are created

3

Second, transgender individuals are not a quasi-suspect class. The Sixth Circuit squarely ruled that groups such as homosexuals are not quasi-suspect classes because such a trait is not "definitively ascertainable at the moment of birth" as "race or biological gender" are. *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). That was essential to the Sixth Circuit's decision. Plaintiff's arguments about illegitimacy are inapposite because paternity is ascertainable at birth, and parents' marital status is an objective issue independent from a child's internal sense of self.[5]

Plaintiff's Title IX arguments are also unavailing.[6] Post-*Bostock* law of *this* Circuit is that *Bostock*'s Title VII reasoning does not apply outside Title VII due to the particular but-for language in Title VII. *See Pelcha v. MW Bancorp., Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021).[7] Plaintiff's reliance on *Chisholm v. St. Mary's City Sch. Dist. Bd. of Educ.*, 947 F.3d 342 (6th Cir. 2020), to argue discrimination based on sex-stereotyping is misplaced. (Pl.'s Opp. at 29.) There, the Sixth Circuit declined to find sex-stereotyping because the profanity did not relate to "gender-inspired expectations" about "wearing

---

equal" and "endowed by their Creator with certain unalienable rights." Supposedly discriminatory legislation passed by the same session of the General Assembly merely (1) prohibited unnecessary hormone treatments for prepubescent children (which Plaintiff does not claim is common treatment for purportedly transgender children); (2) allowed parents to know what their kids were being taught in the classroom and opt out of controversial gender identity discussions; and (3) established a law for bathrooms that this Court has twice allowed to remain in effect.

[5] Regardless of whether this Court can consider evidence outside the record for determining whether transgender individuals are a quasi-suspect class, Plaintiff has not actually cited any of the materials from *Grimm v. Gloucester County School Board*, 972 F.3d 586 (2020), and that case was decided before the election of President Biden, who opposes the Gender in Athletics Law.

[6] Although Plaintiff fails to establish a Title IX claim as a matter of law, the undisputed facts as applied to Plaintiff fare no better: Plaintiff has the opportunity to participate with the girls' golf team, as Plaintiff did in middle school, and the high school girls' golf team regularly practices and plays with the boys' golf team. (Pl.'s Resp. to DSUMF ¶¶ 16, 17.)

[7] Plaintiff absurdly claims State Defendants waived arguments about *Bostock* (Pl.'s Opp. at 30) even though the previous page in Plaintiff's brief acknowledges that the State Defendants "argue that *Bostock* does not apply to Title IX" (Pl.'s Opp. at 29).

4

makeup, jewelry, or certain hairstyles" or "wear[ing] feminine clothing." *Chisholm*, 947 F.3d at 352.[8]  The Gender in Athletics Law defines gender as sex itself, not stereotypes.  Sex is obviously relevant for athletics[9] and golf in particular[10] because it determines physiology.

## II. Plaintiff has failed to carry the burden of showing that Plaintiff has standing.

Plaintiff does not have standing, which is Plaintiff's burden to show.  *First*, Plaintiff failed to sue TSSAA.  Plaintiff leans heavily on *prior* TSSAA Policy and one line from the TSSAA's Executive Director's statement that "the participation of transgender boys in interscholastic sports would have posed no issue in the absence of" the Gender in Athletics Law.  (Dkt. 53-11 ¶ 6.)  But "would have posed" indicates the past tense, not the present (which is "would pose").

*Second*, Plaintiff has failed to show the ability to shoot an average score of 90 or better for 18-walking holes through 3 rounds of golf.  (Pl.'s Resp. to DSUMF ¶¶ 1-7, 14.)  Unlike cases involving affirmative action for university admissions or for businesses, that is an objective skill requirement preventing Plaintiff from joining this boys' golf team regardless of other students' performance, just as attending Farragut High School is also an objective requirement.[11]

This Court should grant State Defendants' motion for summary judgment.

---

[8] Those criteria are in fact ones that Plaintiff apparently wants to use in deciding which students play on which athletic teams.  (Pl.'s Memo. of Law at 2, 11.)

[9] *See Cape v. TSSAA*, 563 F.2d 793, 795 (6th Cir. 1977); *Cohen v. Brown Univ.*, 101 F.3d 155, 177-78 (1st Cir. 1996); *Neal v. Bd. of Trustees of Cal. State Univs.*, 198 F.3d 763, 733 n.8 (9th Cir. 1999); *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615-16 (6th Cir. 2002).

[10] *See* Egret, C.I. et al., *Kinematic analysis of the golf swing in men and women experienced golfers*, Int J Sports Med 27(6):463-467, (2006) (analyzing males and females separately); Horan, S.A. et al., *Thorax and pelvis kinematics during the downswing of male and female skilled golfers*, J Biomech 43(8):1456-1462 (2010) (same); *see also* Hilton, E. N. & T.R. Lundberg, *Transgender women in the female category of sport: perspectives on testosterone suppression and performance advantage*, Sports Medicine 51:199-214 (2021) (the male sex drives golf balls farther on average).

[11] State Defendants are also immune from suit for reasons already explained in this case.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

CLARK L. HILDABRAND, BPR # 038199
Assistant Solicitor General

/s/ Stephanie Bergmeyer
STEPHANIE BERGMEYER, BPR # 027096
Senior Assistant Attorney General
Office of Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Stephanie.Bergmeyer@ag.tn.gov
(615) 741-6828

*Attorneys for Governor Lee, Commissioner Schwinn, Dr. Morrison, the individual members of the Tennessee State Board of Education, in their official capacities, and the Tennessee State Board of Education*

6

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this Reply in Support of State Defendants' Motion for Summary Judgment has been served through the e-filing system on November 18, 2022, to:

Leslie Cooper
Lisa Nowlin-Sohl
Taylor Brown
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004

Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION FUND INC.
1776 K St. NW, 8th Floor
Washington, DC 20006-5500

Tara L. Borelli
Carl S. Charles
LAMBDA LEGAL DEFENSE AND EDUCATION FUND INC.
1 West Court Sq., Ste. 105
Decatur, GA 30030-2556

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich St., 45th Floor
New York, NY 10007

Thomas F. Costello-Vega
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Ave., Ste. 2400
Los Angeles, CA 90071

Britany Riley-Swanbeck
Emily L. Stark
Samuel M. Strongin
Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006

Matthew D. Benedetto
WILMER & LEE, P.A.
100 Washington St., Ste. 200
Huntsville, AL 35804

Stella Yarbrough
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212

David M. Sanders
Senior Deputy Law Director
Knox County, Tennessee
400 W. Main St., Suite 612
City-County Building
Knoxville, TN 37902

Jessica Jernigan-Johnson
LONDON & AMBURN, PLLC
607 Market St., Ste. 900
Knoxville, TN 37902

/s/ Stephanie Bergmeyer
Stephanie Bergmeyer