2022 WL 17076105
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

R. K., a minor, BY AND THROUGH her mother and
next friend, J. K.; W. S., a minor, by and through her
parent and next friend, M. S.; S. B., a minor, by and
through his parents and next friends, M. B. AND L.
H.; M. S., a minor, by and through her parent and next
friend, K. P.; T. W., a minor, by and through her parent
and next friend, M. W.; M. K., a minor, by and through
her parent and next friend, S. K.; E. W., a minor, by and
through his parent and next friend, J. W.; J. M., a minor,
by and through her parent and next friend, K. M., and on
behalf of those similarly situated, Plaintiffs-Appellees,
v.
Bill LEE, in his official capacity as Governor
of Tennessee; Penny Schwinn, in her official
capacity as Commissioner of the Tennessee
Department of Education, Defendants-Appellants.

No. 22-5004
|
Argued: July 25, 2022
|
Decided and Filed: November 18, 2022

Appeal from the United States District Court for the Middle
District of Tennessee at Nashville. No. 3:21-cv-00853—
Waverly D. Crenshaw, Jr., Chief District Judge.

**Attorneys and Law Firms**

ARGUED: James R. Newsom, III, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL AND REPORTER,
Memphis, Tennessee, for Appellants. Justin S. Gilbert,
GILBERT LAW, PLC, Chattanooga, Tennessee, for
Appellees. ON BRIEF: James R. Newsom, III, Matthew
Dowty, Reed N. Smith, Robert W. Wilson, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL AND REPORTER,
Memphis, Tennessee, for Appellants. Justin S. Gilbert,
GILBERT LAW, PLC, Chattanooga, Tennessee, Bryce W.
Ashby, Brice M. Timmons, Craig A. Edgington, DONATI
LAW, PLLC, Memphis, Tennessee, Jessica F. Salonus, THE
SALONUS FIRM, PLC, Jackson, Tennessee, for Appellees.

Before: NORRIS, SUHRHEINRICH, and CLAY, Circuit
Judges.

NORRIS, J., delivered the opinion of the court in which
SUHRHEINRICH, J., joined. CLAY, J. (pp. —— – ——),
delivered a separate opinion concurring in the judgment only.

**OPINION**

ALAN E. NORRIS, Circuit Judge.

**\*1** In 2021, the Tennessee General Assembly enacted
a new statute ("the Act") in response to the COVID-19
pandemic. Tenn. Code Ann. § 14-1-101 *et seq.* Among
other things, the Act addresses vaccination, masking, and
quarantine decisions. For example, "[a] local health entity or
official, mayor, governmental entity, or school does not have
the authority to quarantine a person or private business for
purposes of COVID-19," Tenn. Code Ann. § 14-4-101(b),
and "a school or a governing body of a school shall not require
a person to wear a face mask while on school property"
unless various conditions are met. Tenn. Code. Ann. §
14-2-104(a).

Immediately after passage of the Act, and prior to seeking
accommodation under its terms, eight minor students with
disabilities (a point that is uncontested) filed suit through
their parents, alleging that the new legislation violated the
Americans with Disabilities Act ("ADA"), 42 U.S.C. §
12101; Section 504 of the Rehabilitation Act of 1973, 29
U.S.C. § 794; the Equal Protection Clause of the Fourteenth
Amendment; and the Supremacy Clause, Article VI, clause
2. Plaintiffs sought a preliminary injunction, which the
district court granted with respect to the two sections of
the Act cited above. Specifically, the district court enjoined
defendants, Bill Lee, the Governor of Tennessee, and Penny
Schwinn, the Commissioner of the Tennessee Department of
Education, from enforcing "Tennessee Code Annotated §
14-2-104 'Face coverings for schools'; and [ ] Tennessee
Code Annotated § 14-4-101(b) to the extent that it prohibits
local health officials and schools from making quarantining
decisions as they relate to public schools." *R.K. by and
through J.K. v. Lee*, 575 F.Supp.3d 957 993 (M.D. Tenn.
2021). Defendants appealed pursuant to 28 U.S.C. § 1292(a)
(1).

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 1

The district court concluded that the Act, despite the inclusion of language that provides that "[a] school shall, to the extent practicable, provide a reasonable accommodation pursuant to the Americans with Disabilities Act," Tenn. Code Ann. § 14-2-104(d)(1), fails to comply with the requirements of either the ADA or the Rehabilitation Act.

## I.

Article III limits federal courts' jurisdiction to actual cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Id.* at 338, 136 S.Ct. 1540. The "irreducible constitutional minimum of standing" requires (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, "a party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction." *Memphis A. Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (quotation marks omitted).

### 1. Injury in Fact

"[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue ... over that violation in federal court." *TransUnion LLC v. Ramirez*, ––– U.S. ––––, 141 S. Ct. 2190, 2205, 210 L.Ed.2d 568 (2021). Similarly, just because Congress has created an express statutory right of action does not mean a plaintiff is injured whenever a defendant violates the underlying statutory duty. *See id.*; *see also Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

**\*2** The Act specifically provides that school officials "shall ... to the extent practicable, provide a reasonable accommodation" to any student who requests it. Tenn. Code Ann. § 14-2-104(d)(2). It then contemplates one such accommodation: "the school shall place the [student] in an in-person educational setting in which other persons who may

place or otherwise locate themselves within six feet (6') of the person receiving reasonable accommodation for longer than fifteen (15) minutes are wearing a face covering provided by the school ...." *Id.* The plaintiffs provide little explanation as to why this accommodation would concretely injure them, other than to quote the district court's findings of fact at length. But even those findings, which describe the undisputed fact that the plaintiffs represent a putative class of students more susceptible to COVID-19 complications, fail to explain why the six-foot bubble accommodation would be insufficient.

Equally significant is plaintiffs' failure to test the practical effect of the Act by seeking an accommodation; instead, they filed this suit on the heels of the Act's passage. A concrete injury, such as falling ill from COVID-19 due to a lack of universal masking, must be more than speculative. "A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quotation omitted). Indeed, no action to enforce the Act would ever be directed at any of these plaintiffs—it would be directed only at their schools, should they decide to violate the Act—which further attenuates the risk of harm the plaintiffs may suffer. Moreover, the Act does not prohibit individual students from wearing masks at any time; it merely redefines how universal mask mandates can be imposed.

Finally, plaintiffs' argument that they are injured by the Act because it categorically violates the ADA amounts to an overly generalized grievance. The Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *abrogated in part on other grounds by Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–30, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014).

### 2. Traceability

Whatever injury the plaintiffs may suffer is not fairly traceable to the two defendants here: Governor Lee and Commissioner of Education Schwinn. In cases where the plaintiff's injury "depends on the unfettered choices made by independent actors not before the court[ ]," the plaintiff has the heightened burden "to adduce facts showing that those choices have been or will be made in such manner

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.  2

as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130 (citations omitted).

Governor Lee's obligation to ensure that the state's laws are faithfully executed does not, by itself, mean that any injury caused by the Act is fairly traceable to him. *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) ("[T]he Governor's 'take care' power does not suffice to invoke federal jurisdiction. We need specific, plausible allegations about what the Governor has done, is doing, or might do to injure plaintiffs.").

Nor does the Governor's role in declaring states of emergency change that. The Act requires that severe conditions exist for universal masking to be imposed. Tenn. Code Ann. § 14-2-104(a)(2). Severe conditions, in turn, require surging cases and a declaration by the Governor of "a state of emergency for COVID-19." Tenn. Code Ann. § 14-1-101(20)(A). The plaintiffs point to no legal duty of the Governor, however, to ever make such a declaration. Rather, making such a declaration is vested in his discretion as the state's chief executive. *See* Tenn. Code Ann. § 58-2-107(b)(2) (providing a state of emergency "*may* be declared by the governor *if the governor finds* an emergency has occurred or occurrence of threat thereof is imminent") (emphases added).

**\*3** The case against the Commissioner of Education is arguably a closer one, but it still falls short. Commissioner Schwinn has specific authority to "withhold future distributions of school funds" from schools that violate the Act. Tenn. Code Ann. § 14-2-104(e). But, like Governor Lee, she has no duty to do that—the Act says only that she "may withhold" the funds, so withholding funds is committed to her discretion. Nor does the Act suggest that schools violating the statute are automatically disentitled from receiving state funds in the future—the funding hold requires action from the Commissioner. Tenn. Code Ann. § 14-2-104(e). Moreover, as noted above, any enforcement action (should it occur) will never be directed at the plaintiffs—it will be directed only at their schools. *See id.* And the plaintiffs do not connect the dots between Commissioner Schwinn's withholding of school funding (if that occurs) and any injury the plaintiffs would thereby suffer. So, even if Commissioner Schwinn enforced the Act, it is speculative whether that action would concretely injure the plaintiffs.

To put it another way, the Act does not place Commissioner Schwinn in a position adverse to these plaintiffs, which means that any injury they suffer is not fairly traceable to her (potential) enforcement actions. *Cf. Muskrat v. United States*, 219 U.S. 346, 361, 31 S.Ct. 250, 55 L.Ed. 246 (1911) ("[J]udicial power ... is the right to determine actual controversies arising between *adverse* litigants.") (emphasis added). The Act places these two defendants in positions adverse only to the schools (or their boards or administrators), if at all. But no school is a party to this case, and the plaintiffs nowhere suggest any intention to make that happen.

All of the foregoing, which has focused on the Act's masking and ADA accommodation provisions, applies with equal force to the Act's quarantining provision, which vests the "sole authority to determine quarantine guidelines for" any "private business or school" in the state's commissioner of health; it also provides that "[a] local health entity or official, ... or school does not have the authority to quarantine a person or private business for purposes of COVID-19." Tenn. Code Ann. § 14-4-101(a)(2), (b). Assuming arguendo that the ADA requires that school officials or local health officials have the authority to make quarantining decisions, any breach of that ADA-duty is not traceable to either defendant here. It is traceable, if at all, to the commissioner of health, who could avoid the (assumed) ADA violation by delegating her quarantining authority to schools or local health officials. But she is not a defendant here. For that reason, the district court's preliminary injunction as to the quarantining provision—which necessarily can apply only to the named defendants, not the health commissioner—cannot redress any injury caused by the Act's quarantine provision.

The plaintiffs argue that traceability exists because the Act severely limits universal masking and quarantining of COVID-positive students, thereby preventing schools from offering students reasonable accommodations. However, plaintiffs nowhere explain why universal masking and quarantining constitute the only reasonable accommodations under the ADA. There is reason to think that a more tailored accommodation—perhaps even the six-foot bubble accommodation contemplated by the Act—would be sufficient to comply with the ADA. *See E.T. v. Paxton*, 19 F.4th 760, 768 (5th Cir. 2021) ("[T]here are any number of other ways schools could accommodate plaintiffs' disabilities without traversing either [an executive order banning mask mandates] or federal law.").

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

*3. Redressability*

To satisfy the redressability element of standing, the plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (quotation omitted). Redressability can be a low bar to clear, at least where a plaintiff seeks redress for "a completed violation of a legal right"—in which case, nominal damages alone provide sufficient redress. *Uzuegbunam v. Preczewski*, ––– U.S. ––––, 141 S. Ct. 792, 802, 209 L.Ed.2d 94 (2021). "Remedies, however, ordinarily operate with respect to specific parties." *California v. Texas*, ––– U.S. ––––, 141 S. Ct. 2104, 2115, 210 L.Ed.2d 230 (2021) (quotation omitted). "In the absence of any specific party, they do not simply operate on legal rules in the abstract." *Id.* (quotation omitted). Rather, prospective relief can redress a future injury only if "the court [may] enjoin[ ] not the execution the statute, but the acts of the official, the statute notwithstanding." *Id.* (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)).

**\*4** Here, the plaintiffs do not seek redress for a completed violation of a legal right; they seek only prospective relief to protect against future violations. Because the plaintiffs' injuries are not fairly traceable to any defendant here, no remedy applicable to those defendants (be it an injunction or a declaration) would redress the plaintiffs' alleged injuries. *See Allen*, 468 U.S. at 757, 104 S.Ct. 3315 (noting that "the federal judiciary may not redress" an injury unless it is "fairly traceable to the Government conduct respondents challenge as unlawful").

In sum, we conclude that plaintiffs have failed to bear their burden of establishing standing. In reaching this decision, we note that two of our sister circuits have recently voided injunctions against similar laws for lack of standing. *See Disability Rights S.C. v. McMaster*, 24 F.4th 893 (4th Cir. 2022); *E.T. v. Paxton*, 19 F.4th 760 (5th Cir. 2021). While these decisions do not control our own, in this instance we find them instructive inasmuch as they found the same jurisdictional flaw as we did under similar, though not identical, circumstances.

## II.

After oral argument was held in this matter, plaintiffs filed a Motion for Suggestion of Mootness of Appeal based upon the evolving COVID-19 situation in Tennessee. Specifically, they note that none of the school districts in Tennessee is currently operating under a mask mandate and positive COVID-19 cases have dropped dramatically in recent weeks. As a result, "Plaintiffs cannot point to evidence that they currently face [a spike in community infection rates], or, given the trending data, that they reasonably *anticipate* facing them." Motion for Suggestion of Mootness at 6. For that reason, they suggest that the appeal of the district court's preliminary injunction order be dismissed as moot.

While this appeal may well be moot, the complaint itself has failed to set out an actual case or controversy and thus lawsuit itself is subject to dismissal for lack of jurisdiction. To dismiss this appeal on mootness grounds would mean that a jurisdictionally flawed case remains in the district court. That approach serves no one's best interest, including the plaintiffs' who would presumably wish to challenge the Act if, and when, circumstances changed and they could point to actual, rather than speculative, harm. In our view, it is far better to dismiss the case in its entirety for lack of jurisdiction. This is a course of action that we have taken when faced when both standing and mootness deficiencies are present. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021) (citing *Sinochem Int'l Co. v. Malaysia Shipping Corp.*, 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)) (observing that this court has "discretion to choose between non-merits grounds for dismissing a suit").

## III.

The district court's injunction is **vacated** and the cause is **remanded** with instructions to **dismiss** the action for lack of jurisdiction.

## CONCURRENCE

CLAY, Circuit Judge, concurring in the judgment only.

After argument was heard in this case, Plaintiffs filed a motion for suggestion of mootness, noting that, in light

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

of changed public health conditions and advancements in treatment options, none of the Plaintiffs required universal masking to access schools. Defendants opposed this motion, arguing that this Court should instead dismiss the case on standing grounds. Although I agree with the majority that this case should be dismissed for lack of jurisdiction, I believe it should be dismissed for mootness, and not for lack of standing.

**\*5** Both standing and mootness are jurisdictional doctrines derived from the Constitution's grant of power to the federal courts to resolve only live "cases" and "controversies." U.S. Const. art. III, § 2. To satisfy the case or controversy requirement, a plaintiff must suffer an actual injury that can be remedied by a favorable judicial decision. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). Although these doctrines are related, they have different requirements. *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019). Whether the parties have standing is determined at the time the complaint in a lawsuit is filed, whereas the mootness doctrine requires a live dispute at the time the federal court decides the case. *Id.* The test to determine whether a claim is moot is "whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Saleh v. Barr*, 801 F. App'x 384, 394 (6th Cir. 2020) (quoting *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003)). Federal courts have discretion to address jurisdictional issues in any order and can choose to address the " 'eas[y]' rather than the more 'difficult' jurisdictional issue." *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (internal quotation marks omitted). In this case, the mootness issue is the easier one to resolve.

Plaintiffs concede that they no longer require universal masking to safely access their schools. Their claims are moot because this Court's order would not affect their legal interests and a decision in this case would have no practical effect. Moreover, the case as a whole is moot since Plaintiffs acknowledge that they do not "reasonably anticipate" facing the same risks they did when the suit was filed. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (noting that the case as a whole is moot when there is not a fair prospect of the recurrence of challenged conduct); *Ohio v. United States Env't Prot. Agency*, 969 F.3d 306, 310 (6th Cir. 2020) (noting that to avoid finding of mootness, challenged "conduct must be 'reasonably' likely to recur, mean[ing] that there must be a fair prospect that the conduct will recur in the foreseeable future").

The majority argues that dismissing the case on mootness grounds would leave a jurisdictionally flawed case in the district court.[1] This is not so. If a case is moot, the judgment below "must be vacated and the case remanded with instructions to dismiss." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

Dismissing the case on mootness grounds is the better resolution of this case since Plaintiffs have presented evidence indicating that they continue to have standing to pursue their claims and because a resolution of this case on those grounds would better comport with this Court's prior decision in this case. Earlier this year, a different panel of this Court denied Defendants' motion to stay the district court's injunction, determining that Plaintiffs showed a substantial likelihood of standing. *See R.K. v. Lee*, No. 22-5004, ECF No. 23, 2022 WL 1467651 (6th Cir. May 10, 2022).

To establish standing, a plaintiff must show that they have: (1) suffered an injury or a threatened injury; (2) that the injury is fairly traceable to the defendants; and (3) that a ruling in favor of the plaintiff will redress that injury. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020)); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). "When assessing standing, courts look only to 'the facts existing when the complaint is filed.' " *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 390 (6th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

**\*6** Plaintiffs met these requirements. In their complaint, Plaintiffs alleged a concrete and particularized injury: the Tennessee statute infringes on their rights by preventing them from seeking and securing individualized, reasonable accommodations in light of the COVID-19 pandemic, including, but not limited to, masking. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). As Plaintiffs put it, they need not "await falling ill or dying because '[s]tanding can derive from

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

imminent, rather than actual injury ....' " (Appellees' Br. 30 (quoting *R.K. v. Lee I*, 568 F. Supp. 3d 895, 899 (M.D. Tenn. 2021) (quoting 🚩*Davis v. FEC*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)).) The Supreme Court has made that much clear; indeed, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief *to prevent the harm from occurring*, at least so long as the risk of harm is sufficiently imminent and substantial."

🚩*TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190, 2210, 210 L.Ed.2d 568 (2021) (emphasis added).

The record is replete with evidence showing the imminent and substantial nature of the risk in this case. The statutory provisions at issue remove school districts' "ability to determine what is reasonable for its schools and students, and what is an appropriate accommodation under the ADA, given the local COVID-19 rates and its impact on a particular community." (Mem. Op., R. 45, Page ID # 1133.) The text of the statute makes clear that if it were to go into effect, there is only a single, one-size-fits-all accommodation available to disabled children: the requirement that other individuals within six feet of the students wear masks, and only if those individuals are within six feet of the accommodated student for more than fifteen minutes. *See* 🚩Tenn. Code Ann. § 14-2-104(d)(2). The lead opinion in this case notes that the district court's findings fail to explain why this accommodation is insufficient, ignoring the district court's express findings of fact that masking is effective for preventing the spread of COVID-19, and that "[f]or students with disabilities, six feet may be too short, and even ten minutes may be too long." (Mem. Op., R. 45, Page ID #1113, 1124 (citing testimony of expert witnesses)).

The lead opinion also argues that the risk of harm to Plaintiffs from enforcement of the statute is too attenuated because the statute focuses on circumscribing schools' ability to mandate masking, and not any individuals' ability to wear a mask themselves. The fact that the statute is directed at schools' ability to impose mask mandates says nothing about the increased risk of exposure if Plaintiffs are not able to request an accommodation tailored to the specific risk they face. And the fact that Plaintiffs' injury is indirect is not fatal to their claim. *See* 🚩*Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 713 (6th Cir. 2015) (noting that "the fact that an injury is indirect does not destroy standing as a matter of course"). Requesting universal masking as a reasonable accommodation would not be an option at all under this scheme, and the only mechanism by which schools could mandate masks would

require: (1) the Governor's declaration of a COVID-19 state of emergency; and (2) high local case counts. 🚩Tenn. Code Ann. §§ 14-1-101 (20), 🚩14-2-104(a)(2). Once in effect, the statute would immediately strip disabled schoolchildren and their parents of their rights to engage with their schools and districts to determine reasonable accommodations, exposing them to COVID-19 and serious illness if they decide to remain in school.

Second, Plaintiffs' alleged injury is also clearly traceable to Defendants. The causation requirement in standing "is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense," but whether the alleged injury "fairly can be traced to the challenged action of the defendant" and not a third party. *See* 🚩*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009) (determining that causation element of standing was met in the plaintiff's suit for rescission where the plaintiff alleged that insurance company issued and collected premiums on insurance policy that was fraudulently procured, even though insurance company played no role in fraudulent procurement). In this case, Defendants do have a role in enforcing the statute barring schools from issuing universal mask mandates.[2] The Governor has the sole authority to declare a state of emergency before any local school-wide masking requirement can be put into effect. *See* 🚩Tenn. Code Ann. §§ 14-4-101(20), 🚩14-2-104(a)(2). Similarly, the Commissioner of Education may withhold state funds from local schools that violate the statute's mask mandate proscription. *See* 🚩Tenn. Code Ann. §§ 14-4-101(a)—(b), 🚩14-2-104(e).

**\*7** The lead opinion cites this Court's decision in *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) for the proposition that a governor's obligation to ensure that laws are faithfully executed does not confer standing on plaintiffs seeking to challenge a statute. In that case, however, the plaintiffs did not allege that the governor had any role to play in their injury or in the challenged statute prohibiting online-ordained ministers from solemnizing marriage rites. By contrast, in this case, the Governor serves as one of the gatekeepers of the accommodation that Plaintiffs seek.

Third and finally, Plaintiffs have shown that a ruling in their favor would redress their injury. Defendants contend

Case 3:21-cv-00835 Document 77-1 Filed 11/22/22 Page 6 of 8 PageID #: 2629

that the "authority to deny or grant masking to Plaintiffs as an accommodation ... resides in nonparties—i.e., local schools and their principals ...." and this precludes a finding of redressability "[b]ecause such third-party conduct is the deciding factor." (Appellant's Br. at 27–28 (citing 🔖 *Lujan*, 504 U.S. at 569, 112 S.Ct. 2130).) This argument is misleading. To be sure, under the statute, local schools have the authority to grant the single, one-size-fits-all "reasonable accommodation" that was carved out by the state legislature: a six-foot bubble that requires other students to wear masks if they are within the bubble for more than fifteen minutes. *See* 🔖 Tenn. Code Ann. § 14-2-104(d)(2). But the narrow and prescribed nature of 🔖 § 14-2-104(d)(2) sets out the statute's discriminatory enforcement problem, rather than a pathway out of litigation on justiciability grounds. Plaintiffs are denied the opportunity to collaborate with their schools to seek out accommodations that are different from the one set forth in the statute and face the choice of risking their health or being deprived of an in-person education. Indeed, because the Governor's state of emergency declaration is a necessary condition for the accommodation that Plaintiffs seek, a "favorable court decision is likely to remedy the alleged violation" in this case since enjoining the statute would permit the Plaintiffs to seek accommodations that differ from the narrow accommodation specified in the statute. 🔖 *Coyne*, 183 F.3d at 496; *see also* 🔖 Tenn. Code Ann. §§ 14-2-104(a)(2), 🔖 14-1-101(20)(A), (B).

The district court did not err when it granted the motion for preliminary injunction, since the Plaintiffs had standing to bring their claims. Nonetheless, due to changed circumstances, the case as a whole has become moot. Accordingly, the injunction must be dissolved and the case dismissed.

### All Citations

--- F.4th ----, 2022 WL 17076105

## Footnotes

1   There is a distinction between mootness as to a preliminary injunction appeal and mootness as to the case as a whole. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (noting that plaintiffs' appeal of decision denying their motion for preliminary injunction was moot once the state rescinded challenged mask mandate). In some instances, an appeal of a preliminary injunction will be moot but the case can proceed on the merits. That distinction does not apply in this case since Plaintiffs argue that the unique risk previously posed to them by the COVID-19 variants no longer exists. Because any decision given by this Court will have no "practical effect" on the Plaintiffs' rights, the case as a whole is moot.

2   Plaintiffs also argued that another part of the statute denies schools the authority to require infected individuals to quarantine. *See* 🔖 Tenn. Code Ann. § 14-4-101. Defendants dispute this characterization of the statute and argue that pursuant to the statute, schools are permitted to quarantine individuals who test positive for COVID-19. The statute gives the Commissioner of Health authority to determine quarantine guidelines. 🔖 Tenn. Code Ann. § 14-4-101(a)–🔖(b). The district court enjoined this section of the statute "to the extent that it prohibits local health officials and schools from making quarantining decisions as they relate to public schools." 🚩 *R.K. by and through J.K. v. Lee*, 575 F. Supp. 3d 957, 993 (M.D. Tenn. 2021). On appeal, Defendants note that the Tennessee Commissioner of Health promulgated Emergency Rule No. 1200-14-04.09(4) ("emergency rule"), which clarifies that schools and local health officials may make quarantining decisions "as they relate to schools." (Appellants' Br. at 8–9). Accordingly, since the district court's injunction only applies if the statute prevents schools from making quarantining decisions, and Defendants concede that it does not, the appeal of the district court's order granting the injunction is moot. This is because any decision issued by this Court with respect to that provision would make no "difference to

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

the legal interests of the parties." *Saleh v. Barr*, 801 F. App'x 384, 394 (6th Cir. 2020) (quoting ⚑ *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003)).

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.