IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.E., *by his next friend and parents,* SHELLEY ESQUIVEL and MARIO ESQUIVEL, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:21-CV-00835 ) |
| BILL LEE, in his official capacity as Governor of Tennessee, et al. | ) ) ) |
| Defendants. | ) ) |

**KNOX COUNTY BOARD OF EDUCATION AND JON RYSEWYK'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants Knox County Board of Education ("KCBOE") and Superintendent Jon Rysewyk (the "Superintendent") (collectively "Knox County Defendants") submit this Revised Response in Opposition to the Plaintiffs'[1] Motion for Summary Judgment [Doc. 50] in accordance with this Court's Order, [Doc. 81], striking KCBOE's original Response [Doc. 63], but permitting KCBOE to "file a new response that includes all of their arguments opposing Plaintiff's Motion for Summary Judgment…." Doc. 81. In attempting to comply with this Court's Order, KCBOE has made herein certain arguments originally argued by the State Defendants in its Motion for Summary Judgment which KCBOE had previously attempted to incorporate by reference. While much of the language incorporated herein is, admittedly, taken from the State Defendants' original

---

[1] Throughout this brief, KCBOE will attempt to be consistent in referring to Plaintiffs in the plural, as the suit is being brought by L.E.'s parents. However, the parties in this suit have varied regarding the identification of L.E. and L.E.'s parents in the singular or plural. KCBOE submits that any use of the singular "Plaintiff" should be interpreted as meaning the same as plural "Plaintiffs" in this context, i.e., L.E. and L.E.'s parents.

Motion, KCBOE has adapted these arguments to its own circumstance as necessity has dictated (see, e.g., Section III.B., *infra*, regarding KCBOE's Policy I-171 satisfying rational basis review). The Knox County Defendants assert that should the Court determine that the State Defendants are entitled to summary judgment, the Knox County Defendants should also be granted summary judgment. In further response, the Knox County Defendants state as follows:

**I.     KCBOE Revised Policy 1-171 In Order to Comply with State Law.**

Contrary to Plaintiff's assertion that SB 228 merely "motivated" KCBOE to revise Policy I-171, the record in this matter demonstrates that KCBOE was required to revise its policy in order to comply with state law. Therefore, KCBOE was acting as an arm of the state and cannot be liable under Section § 1983. As explained in the Knox County Defendants' Motion for Summary Judgment, Tennessee Code Annotated §49-6-310 required KCBOE to adopt the policy at issue. Subsection (b) of that statute states: "each local board of education and governing body of a public charter school **shall** adopt and enforce a policy to ensure compliance with sub§(a)." *Id.* Under Tennessee law, the use of the word "shall" implies that the statute is mandatory. "In general, use of the word 'shall' in a statute indicates that the statutory provision is mandatory, not discretionary." *Emory v. Memphis City. Sch. Bd. of Educ.*, 514 S.W.3d 129, 144, n. 11 (Tenn. 2017).

Moreover, the state representatives acknowledged that this law required local education agencies to adopt such a policy. Commissioner Penny Schwinn testified that this law is mandatory on local education agencies like KCBOE. [Deposition of Penny Schwinn, p. 207, l. 2-13, Doc. 58-4]. Sara Morrison, Executive Director of the Tennessee State Board of Education, testified that the State Department of Education will review the polices adopted by the local education agency

for compliance with this statute and that the statute requires each local board of education to adopt and enforce a policy in compliance with the statute. [Morrison Depo., p. 108-109, Doc. 58-5].

Further, Jennifer Hemmelgarn, KCBOE's 30(b)(6) deponent, testified that KCBOE's role is to implement the state education system at the local level. [Hemmelgarn Deposition, p. 25, l. 4-13, Doc. 58-3]. She further testified that KCBOE understood that this state law required KCBOE to adopt a policy in compliance with it and that KCBOE had no role in drafting, advocating, or passing this law. [*Id.*, p. 86-87]. As she explained, the only basis for enacting the policy was to comply with state law. [*Id.*]. There is nothing in the record to show that KCBOE adopted this policy for any reason other than in order to comply with state law, or that it exercised its own independent decision-making authority in implementing Policy I-171, which merely recites the language of Tennessee Code Annotated § 49-6-310.

Finally, there is no evidence in the record that KCBOE has investigated or disciplined any school or KCS employee for violating Policy I-171. As explained by KCBOE's 30(b)(6) deponent, enforcement focuses on educating the schools on the policy and relevant state law:

Q: Okay. And what steps or actions does Knox County Schools take to ensure that individual schools are complying with I-171?

[Objection Omitted]

A: Informing school principals, athletic directors, and then athletic directors informing their coaching staff that the policy and state law exist.

Q: Are there any additional steps that Knox County Schools takes?

[Objection Omitted]

> A: I can't think of any right now.

[Hemmelgarn Depo., p. 99-100].[2]

While the KCBOE 30(b)(6) witness did testify that if a hypothetical violation occurred, KCBOE would investigate and take appropriate action, there is no evidence that a violation has occurred. The process outlined by the deponent is the same process that KCBOE uses for any alleged policy violation, whether a violation of I-171 or any other KCBOE policy. Indeed, as the deponent testified, the Knox County Defendants are not aware of any transgender student who has attempted to participate in interscholastic athletics on the team different from their sex at birth since SB 228 was passed. [Hemmelgarn Depo., 105-106]. This includes the Plaintiff in this matter. It is undisputed that L.E. has never tried out for any golf team at Farragut High School and has never spoken to anyone at Farragut High School about trying out for the golf team. [L.E. Depo., 18-19, 40]. While KCBOE does require each school to comply with all of its policies, including I-171, there is no evidence in the record of any enforcement action against any KCS school, employee, or student.

## II. Plaintiffs Lack Standing.

Federal courts may only adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A case or controversy only exists if the plaintiffs have "personal stake" in the outcome of the dispute, that is, if the plaintiffs have standing to present the claims. *TransUnion*, 141 S. Ct. at 2203. Standing contains three elements. *First*, the plaintiffs must have suffered an "injury in fact" (i.e., an injury that is both "concrete and particularized," and "actual or imminent"—not "conjectural or hypothetical"). *Lujan v. Defs. Of*

---

[2] Excerpts of the 30(b)(6) deposition were previously filed as an exhibit to the declaration of Jessica Jernigan-Johnson in support of the Knox County Defendants' previous response. [Doc. 65-1].

*Wildlife*, 504 U.S. 555, 560 (1992). *Second*, the alleged injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 561 (quotation omitted). *Third*, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation omitted). Plaintiffs bear the burden of establishing these elements. And while "general factual allegations of injury" may satisfy those elements at the pleading stage, the standard at summary judgment is more demanding. *Id.* Plaintiffs "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" in order to demonstrate standing. *Id.*(quoting Fed. R. Civ. P. 56(e)). Here, Plaintiffs' allegations of harm are speculative and hypothetical and thus, Plaintiffs lacks standing to bring these claims.

### A. Plaintiffs' alleged injuries are speculative and hypothetical.

Plaintiffs' allegations of harm can be categorized into two main theories: (1) L.E. was barred from the boys' golf team because L.E. is a transgender person; and (2) L.E. was barred from trying out for the team as a boy because L.E. is a transgender person. Neither is justiciable. To survive summary judgment, Plaintiffs must submit specific factual evidence showing not only that a transgender sports policy is unlawful, but also that Plaintiffs would be "directly" and uniquely affected by the rule. *Lujan*, 504 U.S. at 563. To demonstrate a unique and direct interest in a rule, it is not enough to simply assert a "'special interest' in th[e] subject"—a plaintiff must use specific evidence to show that he is, in fact, a member of the class of people affected by the rule. *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Plaintiffs fail to meet that standard. There is no question that L.E. enjoys golf, but a special interest does not create standing. Plaintiffs must actually provide objective indicators showing that L.E. is in the class of golfers who would otherwise have the requisite skill to play on the boys' golf

5

team. For Farragut High School, that means being able to play three rounds of golf on an 18-hole course and finish with an average score of 90 or better. (Higgins Dep. 46:11-15; Ex. 3.) Plaintiffs provide no specific evidence to suggest that L.E. is capable of playing at that level. In fact, virtually every piece of evidence cuts in the opposite direction. L.E. plays golf for fun and doesn't keep score, even after commencing this lawsuit. (Shelley Esquivel Dep. 37:7-12); (L.E. Dep. 13:8-14).[3] L.E. does not golf that often—L.E. has only played golf a handful of times over the last year. (Mario Esquivel Dep. 33:17-25; 34:1-13; 35:16-20); (Shelley Esquivel Dep. Ex. 1, Int. No. 3); (L.E. Dep. 16:20-23; 17:1-7). And, when L.E. does play golf, L.E. usually plays at a local par-three course (a much smaller course). (Mario Esquivel Dep. 7:12-16); (L.E. Dep. 36:19-25). In the past year, L.E. has visited only one 18-hole course, and neither L.E. nor L.E.'s father kept score. (Mario Esquivel Dep. 33:17-25; 34:1-5.) Plaintiffs presented no scorecards, no handicap data, no driving distances, no statements from golf coaches or instructors. Plaintiffs have not presented a single piece of evidence indicating that Plaintiff has *ever* shot a 90 or better on a standard 18-hole course. Finding that L.E. is otherwise qualified for the golf team thus requires crossing "into pure speculation and fantasy." *Lujan*, 504 U.S. at 567.

Plaintiffs' alternative theory of harm (i.e., someday being barred from trying out for the team) fares no better. A "profession of an intent" to try out, without supporting evidence, "is simply not enough." *Id.* at 564. To survive summary judgment, Plaintiffs must bolster that theory with specific facts. For example, In *Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017), the Sixth Circuit upheld the district court's determination that the plaintiff nightclub lacked standing to challenge the city's nightclub ordinance which allegedly prevented them from opening their club when the record demonstrated that the club had never applied for a permit. The record here

---

[3] These deposition excerpts were filed in support of the State's Motion for Summary Judgment and attached as an exhibit to Stephanie Bergmeyer's declaration. [Doc. 57].

6

requires a similar result. L.E. and L.E.'s parents are unaware of the dates of the tryouts, (Mario Esquivel Dep. 19:19-21); (Shelley Esquivel Dep. 31:10-16); (L.E. Dep. 18:11-13); L.E. has not exhibited a training regimen commensurate with the fact that the Farragut boys' golf team won the state championship in 2020 and in 2021 placed second in the regional tournament with its players scoring 75, 78, 78, and 80, (Higgins Dep. 88:17-21; 88:22; 89:1-5; 90:21-22; 91:1-17; Ex. 7.); neither L.E. nor L.E.'s parents ever spoke to Coach Higgins about L.E.'s desire to try out for the team (Higgins Dep. 36:16-17; 37:7-9); and when invited to try out for the 2022 season, L.E. rejected the offer. (Shelley Esquivel Dep. 33:19-34:1). Of note, there is not a separate tryout for the boys' golf team and the girls' golf team. (Higgins Dep. 46:5-7.) L.E.'s "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" that the caselaw requires. *Lujan*, 504 U.S. at 564.

**B.     Plaintiffs Have Not Shown the Alleged Injury is Redressable.**

To demonstrate redressability, a plaintiff must prove that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation omitted). When a plaintiff claims to be injured by the regulation of a third party who is not before the court, it becomes "substantially more difficult" to establish standing. *Id.* at 562. When traceability and redressability hinge on the independent choices of a regulated third party, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* And, at summary judgment, the plaintiff's burden is significant. Mere "unadorned speculation" about third-party conduct "will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

7

Here, if Tenn. Code Ann. §49-6-310 is repealed, L.E.'s eligibility to play on the Farragut boy's golf team would be determined by TSSAA policy. Plaintiffs no doubt suspect that if the challenged law were invalidated, the TSSAA might reverse course and once again adopt a policy defining gender as gender identity as it did in 2018. But Plaintiffs fail to provide specific facts to support that suspicion. The reality is that, even if Plaintiffs prevailed in invalidating this law, there is no evidence that TSSAA would adopt a similar policy permitted students to play on the sport team of their gender identity. There is simply no way for this Court to know what the future TSSAA policy will be when the TSSAA is not a party to this case. This Court, along with the parties, can only speculate. And because speculation has no place in a redressability analysis, this Court should find that the Plaintiffs lack standing.

### III. Plaintiffs' Equal Protection Claim Against the Knox County Defendants Fails as a Matter of Law.

The Equal Protection Clause guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Accordingly, the Equal Protection Clause prohibits states from "making distinctions that (1) burden a fundamental right; (2) target a suspect class or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). Policy I-171 incorporates Section 49-6-310(a), which treats all students alike by applying the same definition of "gender" to all students: For purposes of interscholastic sports, gender is determined in the same way across the board—by the student's sex at the time of birth—regardless of sex or transgender status.

8

### A. The statute satisfies rational-basis review as a definition of "gender."

Section § 49-6-310(a) does not itself separate students into different sports, and Plaintiff has declined to sue the agency that does—the TSSAA. The TSSAA separates several interscholastic sports (including basketball, cross country, golf, tennis, and track and field into separate divisions for boys and girls. (Hemmelgarn Dep. 128:21-22, 129, 130:1-13; Dodgen Dep. Ex. 3- 2022-23 TSSAA Handbook; Bergmeyer Decl. ¶ 3; Ex. 1- TSSAA Sports.) Because Plaintiff does not challenge TSSAA's rules separating students on the basis of sex, there is no further "implication of any constitutionally protected fundamental right (or suspect classification)," and "heightened scrutiny is indisputably inappropriate." *Ill. Health Care Ass'n v. Ill. Dep't of Pub. Health*, 879 F.2d 286, 288 n.4 (7th Cir. 1989). Rational-basis review applies to the definition of "gender" as defined by Tenn. Code Ann. § 49-6-310(a). Courts have repeatedly applied rational-basis review to challenges of the definitional contours of various classifications, even racial ones. *See, e.g.*, *Jana-Rock Constr., Inc. v. N.Y. Dep't of Econ. Dev.*, 438 F.3d 195 (2d Cir. 2006) (applying rational-basis review to definition of "Hispanic"); *Orion Ins. Grp. v. Wash. State Off. of Minority & Women's Bus. Enters.*, No. 16-5582, 2017 WL 3387344, at *2, 11, 13 (W.D. Wash. Aug. 7, 2017) (applying rational-basis review to definition of "Black"), *aff'd sub nom. Orion Ins. Grp. v. Washington's Off. of Minority &Women's Bus. Enterprises*, 754 F. App'x 556 (9th Cir. 2018); *Hoohuli v. Ariyoshi*, 631 F. Supp. 1153, 1159 (D. Haw. 1986) (applying rational-basis review to definition of "Hawaiian"). In *Jana-Rock Construction, Inc.*, a plaintiff challenged New York's decision not to classify him as Hispanic for purposes of an affirmative-action program. 438 F.3d at 200, 205. Plaintiff Rocco Luiere was "the son of a Spanish mother whose parents were born in Spain" and submitted a sworn affidavit stating "I am a Hispanic from Spain." *Id.* at 199, 203. The Second Circuit held that New York's rejection of the plaintiff's definition of himself as Hispanic

did not violate the Equal Protection Clause because, although strict scrutiny applies to the decision to treat individuals differently on the basis of race or national origin, the definitional contours of New York's classification required only a rational basis. *Id.* at 210. A state's definitions may "appear arbitrary or unfair to persons classified as being within or without the chosen category," but that is insufficient to subject the definitions themselves to heightened scrutiny. *Id.*

"Gender-based distinctions are less likely to create the analytical and practical[]problems present in preferential programs premised on racial or ethnic criteria," so there is no reason not to apply rational-basis review to Tennessee's definition of gender as sex as identified at birth. *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 302-03 (1978) (op. of Powell, J.). After all, "[w]ith respect to gender," using this traditional equivalence of "gender" and "sex," "there are only two possible classifications." *Id.* at 303.

### B. Policy 1-171 satisfies rational basis review.

Thus, the question is whether or not Policy I-171 satisfies rational basis review. A school board's policy satisfies rational-basis review when it "is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440; *see also Montgomery v. Carr*, 101 F.3d 1117, 1130 (6th Cir. 1996) (upholding school district's anti-nepotism policy because it was reasonably related to important governmental interests). This is a "relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976). A "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Borman's, Inc. v. Mich. Prop. & Cas. Guar. Ass'n*, 925 F.2d 160, 162 (6th Cir. 1991) (quoting *Baker v. Vanderbilt Univ.*, 616 F. Supp. 330, 331 (M.D. Tenn. 1985)).

Policy I-171 was adopted in order to comply with state law and to avoid KCBOE's potential loss of educational funds from the State. Commissioner Penny Schwinn testified that this law is mandatory on local education agencies like KCBOE. [Deposition of Penny Schwinn, p. 207, l. 2-13, Doc. 58-4]. Sara Morrison, Executive Director of the Tennessee State Board of Education, testified that the State Department of Education will review the polices adopted by the local education agency for compliance with this statute and that the statute requires each local board of education to adopt and enforce a policy in compliance with the statute. [Morrison Depo., p. 108-109, Doc. 58-5]. Jennifer Hemmelgarn, KCBOE's 30(b)(6) deponent, testified that KCBOE's role is to implement the state education system at the local level. [Hemmelgarn Deposition, p. 25, l. 4-13, Doc. 58-3]. She further testified that KCBOE understood that this state law required KCBOE to adopt a policy in compliance with it. [*Id.*, p. 86-87]. A local education agency's decision to adopt a policy that is required by state law in order to comply with that law and protect its schools from a loss of funding is reasonably related to its governmental interest in implementing state educational policy. Accordingly, Policy I-171 satisfies rational basis review.

## IV. Plaintiffs' Title IX Claim Against the Knox County Board of Education Also Fails.

Plaintiffs also allege a Title IX claim against the Knox County Board of Education. As explained in the Knox County defendants' Motion for Summary Judgment, KCBOE is entitled to summary judgment as a matter of law because the adoption of Policy I-171 does not mean that the it has "on the basis of sex" "excluded" Plaintiff or any other student "from participation in" "any education program or activity receiving Federal financial assistance," "denied" any student "the benefits of" such activity, or otherwise "subjected" any student to "discrimination." 20 U.S.C. § 1681(a). To start, Title IX prohibits only discrimination "on the basis of sex," not discrimination on the basis of transgender status or gender identity. A contrary holding would represent a new

interpretation of Title IX which is not supported by the text of Title IX itself or the Supreme Court's decision in *Bostock*. As the Eastern District of Tennessee recently explained:

> The *Bostock* decision only addressed sex discrimination under Title VII; the Supreme Court expressly declined to "prejudge" how its holding would apply to "other federal or state laws that prohibit sex discrimination" such as Title IX. *Bostock*, 140 S. Ct. at 1753. Similarly, the Supreme Court explicitly refused to decide whether "sex-segregated bathrooms, locker rooms, and dress codes" violate Title VII. *Id. Bostock* does not require Defendants' interpretations of Title VII and IX. **Instead, Defendants fail to cabin themselves to *Bostock*'s holding. Defendants' guidance documents advance *new* interpretations of Titles VII and IX and impose *new* legal obligations on regulated entities.** Thus, as further explained below, the challenged guidance documents are legislative rules; and "[l]egislative or substantive rules are, by definition, final agency action." *Doe v. U.S. Customs & Border Protection*, 2021 U.S. Dist. LEXIS 48817, 2021 WL 980888, at *9 (D.C. Cir. Mar. 16, 2021) (quoting *Broadgate Inc. v. U.S. Citizenship & Immigration Servs.*, 730 F.Supp.2d 240, 243 (D.C. Cir. 2010)).

*Tennessee v. United States Dep't of Educ.*, -- F.4th --, 2022 U.S. Dist. LEXIS 125684 (E.D. Tenn. July 15, 2022).

Accordingly, KCBOE did not violate Title IX when it adopted a policy, as required by state law, which defined "gender" for the purposes of inter-scholastic sports participation.

Respectfully submitted this the 24th day of January, 2023.

                                                          s/David M. Sanders
                                                          DAVID M. SANDERS (BPR # 016885)
Senior Deputy Law Director
JESSICA JERNIGAN-JOHNSON (BPR # 032192)
Deputy Law Director
Suite 612, City-County Building
400 Main Street
Knoxville, TN 37902
(865) 215-2327

*Counsel for Defendants, Knox County Board of Education, Knox County Schools and Dr. Jon Rysewyk*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on the date recorded by the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties who have filed an appearance in the case, by and through the following counsel:

Alan Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street, 45th Floor
New York, NY 10007
Tel: (212) 937-7294
alan.schoenfeld@wilmerhale.com


Emily L. Stark (*pro hac vice*)
Samuel M. Strongin (*pro hac vice*)
Britany Riley-Swanbeck (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
emily.stark@wilmerhale.com
samuel.strongin@wilmerhale.com
britany.riley-swanbeck@wilmerhale.com


Tara L. Borelli (*pro hac vice*)
Carl S. Charles (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
1 West Court Square, Suite 105
Decatur, GA 30030-2556
Tel: (404) 897-1880
Fax: (404) 506-9320
tborelli@lambdalegal.org
ccharles@lambdalegal.org

Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
Street NW, 8th Floor
Washington, DC 20006-5500
Tel: (202) 804-6245
sbuchert@lambdalegal.org


Jennifer Milici
John W. O'Toole
Wilmer, Cutler & Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6256
jennifer.milici@wilmerhale.com
john.o'toole@wilmerhale.com


Leslie Cooper
L. Nowlin-Sohl
Meredith Taylor Brown
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lcooper@aclu.org
lnowlin-sohl@aclu.org
tbrown@aclu.org

Stella Yarbrough
Lucas Cameron-Vaughn
Thomas H. Castelli
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Tel: (615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org
tcastelli@gmail.com

Clark Lassiter Hildabrand
Stephanie A. Bergmeyer
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-6828
clark.hildabrand@ag.tn.gov
stephanie.bergmeyer@ag.tn.gov

Matthew D. Benedetto
Thomas F. Costello-Vega
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5300
matthew.benedetto@wilmerhale.com
thomas.costello@wilmerhale.com

     This the 24th day of January, 2023.

                                        *s/ David M. Sanders*
                                        DAVID M. SANDERS