# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| L.E., by next friends and parents, **SHELLEY ESQUIVEL** and **MARIO ESQUIVEL**, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:21-cv-00835 |
| v. | ) | |
| | ) | Chief Judge Waverly D. Crenshaw Jr. |
| **BILL LEE**, in his official capacity as Governor of Tennessee; et al., | ) ) | Magistrate Judge Alistair E. Newbern |
| | ) | |
| **KNOX COUNTY BOARD OF EDUCATION** a/k/a **KNOX COUNTY SCHOOL DISTRICT**; et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' SUPPLEMENTAL BRIEF

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.  *L.W.* Confirms That Defendants Are Entitled to Summary Judgment on L.E.'s Equal Protection Claim............................................................................................. 2

    A.  *L.W.* forecloses treatment of L.E.'s challenge as sex-based. .................................. 3

    B.  L.E.'s transgender-based challenge does not trigger heightened scrutiny............... 6

    C.  The challenged law and policy easily satisfy rational-basis review. ....................... 9

II. *L.W.* Confirms That Defendants Are Entitled to Summary Judgment on L.E.'s Title IX Claim. .................................................................................................. 12

CONCLUSION.................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*37712, Inc. v. Ohio Dep't of Liquor Control,*
  113 F.3d 614 (6th Cir. 1997) ................................................... 9

*Abbott v. Perez,*
  138 S. Ct. 2305 (2018) ........................................................ 12

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,*
  57 F.4th 791 (11th Cir. 2022) ................................... 2, 6, 13, 14

*Bostock v. Clayton Cnty.,*
  140 S. Ct. 1731 (2020) ................................................... *passim*

*Bowen v. Gilliard,*
  483 U.S. 587 (1987) ........................................................... 7

*Caskey Baking Co. v. Virginia,*
  313 U.S. 117 (1941) ........................................................... 3

*Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.,*
  947 F.3d 342 (6th Cir. 2020) ................................................ 12

*D.H. v. Williamson Cnty. Bd. of Educ.,*
  638 F. Supp. 3d 821 (M.D. Tenn. 2022) ............................... 2, 12, 13

*D.H. v. Williamson Cnty. Bd. of Educ.,*
  2023 WL 6302148 (M.D. Tenn. Sept. 27, 2023) ............................. 13

*Dobbs v. Jackson Women's Health Org.,*
  142 S. Ct. 2228 (2022) ....................................................... 11

*FCC v. Beach Commc'ns, Inc.,*
  508 U.S. 307 (1993) ...................................................... 10, 12

*Interstate Towing Ass'n, Inc. v. City of Cincinnati*
  6 F.3d 1154 (6th Cir. 1993) ................................................. 10

*Kimel v. Fla. Bd. of Regents,*
  528 U.S. 62 (2000) ........................................................... 10

*L.W. v. Skrmetti,*
  2023 WL 6321688 (6th Cir. Sept. 28, 2023) ........................... *passim*

*Lehnhausen v. Lake Shore Auto Parts Co.,*
　410 U.S. 356 (1973)................................................................................ 10

*Mass. Bd. of Ret. v. Murgia,*
　427 U.S. 307 (1976)................................................................................ 10

*Meriwether v. Hartop,*
　992 F.3d 492 (6th Cir. 2021) ................................................................ 12

*Michael M. v. Superior Ct.,*
　450 U.S. 464 (1981)............................................................................. 6, 11

*Nguyen v. INS,*
　533 U.S. 53 (2001)........................................................................ 6, 10, 14

*Ondo v. City of Cleveland,*
　795 F.3d 597 (6th Cir. 2015) .................................................................. 9

*Pelcha v. MW Bancorp, Inc.,*
　988 F.3d 318 (6th Cir. 2021) ................................................................ 12

*Smith v. City of Chicago,*
　457 F.3d 643 (7th Cir. 2006) ................................................................ 10

*Smith v. City of Salem,*
　378 F.3d 566 (6th Cir. 2004) .................................................................. 5

*Trump v. Hawaii,*
　138 S. Ct. 2392 (2018)........................................................................... 12

*United States v. O'Brien,*
　391 U.S. 367 (1968)............................................................................... 11

*United States v. Virginia,*
　518 U.S. 515 (1996)............................................................................. 4, 6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
　429 U.S. 252 (1977)............................................................................... 11

*Washington v. Glucksberg,*
　521 U.S. 702 (1997)................................................................................ 9

iii

## Statutes and Regulations

18 U.S.C. § 116(a)(1) .................................................................................. 4

20 U.S.C. § 1681(a) .................................................................................. 13

42 U.S.C. § 2000e-2 .................................................................................. 13

34 C.F.R. § 106.41(b) .................................................................................. 13

Ala. Code § 16-1-52 .................................................................................. 8

Ariz. Rev. Stat. Ann. § 15-120.02 .................................................................................. 8

Ark. Code Ann. § 6-1-107 .................................................................................. 8

Cal. Educ. Code § 221.5(f) .................................................................................. 7

Fla. Stat. § 1006.205 .................................................................................. 8

Ind. Code § 20-33-13-4 .................................................................................. 8

Iowa Code § 261I.2 .................................................................................. 8

Kan. Stat. Ann. ch. 13 § 3 .................................................................................. 8

Ky. Rev. Stat. Ann. § 156.070(2)(g) .................................................................................. 8

Ky. Rev. Stat. Ann. § 311.372(2) .................................................................................. 4

La. Stat. Ann. § 4:444 .................................................................................. 8

Miss. Code. Ann. § 37-97-1 .................................................................................. 8

Mo. Rev. Stat. § 163.048 .................................................................................. 8

Mont. Code Ann. § 20-7-1306 .................................................................................. 8

N.C. Gen. Stat. Ann. § 115C-12(23) .................................................................................. 8

N.D. Cent. Code § 15.1-41-02 .................................................................................. 9

Okla. Stat. tit. 70, § 27-106 .................................................................................. 9

S.C. Code Ann. § 59-1-500 .................................................................................. 9

S.D. Codified Laws § 13-67-1 .................................................................................. 9

Tenn. Code Ann. § 49-6-310(a) .................................................................................. *passim*

Tenn. Code Ann. § 68-33-103 ........................................................... 4

Tex. Educ. Code Ann. 33.0834 ......................................................... 9

Utah Code Ann. § 53G-6-902 ........................................................... 9

W. Va. Code § 18-2-25d .................................................................... 9

Wyo. Stat. Ann. § 21-25-102 ............................................................ 9

## Other Authorities

Colo. High Sch. Activities Assoc., *CHSAA Bylaws 2023-2024* ...................................... 7

Connecticut Interscholastic Athletic Conference, *Reference Guide for Transgender Policy* ........ 7

Delaware Interscholastic Athletic Assoc., *FAQs Concerning 1008 DIAA High School Interscholastic Athletics* ..................................................................... 8

District of Columbia State Athletic Assoc., *2022-23 Member Handbook* ................... 8

Illinois High Sch. Assoc., *ISHA Handbook (2023-2024)* ............................................. 8

Maryland Pub. Secondary Sch. Athletic Assoc., *MPSSAA Transgender Person Guidance for Participation in Interscholastic Athletics* ....................................................... 8

Massachusetts Dep't of Elementary and Secondary Educ., *Nondiscrimination on the Basis of Gender Identity* ........................................................................... 8

Minnesota High Sch. Sports League, *300.00 Bylaws: Administration of Student Eligibility*......... 8

Nevada Interscholastic Activities Assoc., *NIAA Transgender Participation Position Statement and Policy*............................................................................. 8

New Hampshire Interscholastic Athletic Assoc., *By-Law Article II Sect. 21: Policy Statement and School Recommendation Regarding Transgender Participation* ........................................... 8

New Jersey State Interscholastic Athletic Assoc., *Transgender Policy – Frequently Asked Questions*............................................................................... 8

New York State Public High Sch. Athletic Assoc., *New York State Public High School Athletic Association Transgender Guidelines*............................................................ 8

Oregon Sch. Activities Assoc., *2023-2024 Oregon School Activities Association Handbook*....... 8

Rhode Island Interscholastic League, *Rules and Regulations Art. 3, Sec. 3.B.* ............................ 8

v

Vermont Principals' Assoc., *Vermont Principals' Association Athletic Policies* .......................... 8

Washington Interscholastic Athletic Assoc., *2023-24 WIAA Handbook* ........................................ 8

# INTRODUCTION

The Sixth Circuit's decision in *L.W. v. Skrmetti*, ___ F.4th ____, 2023 WL 6321688 (6th Cir. Sept. 28, 2023), dooms L.E.'s Equal Protection and Title IX claims. As this Court has already recognized, *L.W.* teed up "issues and arguments at the heart of the instant case," including "[1] which level of scrutiny to apply for [the] equal-protection analysis, [2] whether the transgender community constitutes a quasi-suspect class, and [3] the application of the Supreme Court's decision in *Bostock v. Clayton County, Georgia*, --- U.S. ----, 140 S. Ct. 1731 (2020) beyond Title VII." Admin. Stay Order, D.E. 92, at 2910.[1] And the Sixth Circuit decided each of those issues in favor of the State.

*First*, *L.W.* declined to apply sex-based intermediate scrutiny to allegations of discrimination based on transgender status. Sex-based discrimination occurs only when the government uses "sex classifications to bestow unequal treatment on men and women." *L.W.*, 2023 WL 6321688 at *16. For purposes of an Equal Protection analysis, discrimination based on transgender status does *not* involve discrimination based on sex. Nor does "[r]ecognizing and respecting biological sex differences . . . amount to [sex] stereotyping." *Id.* at *18.

*Second*, *L.W.* shut the door on treating transgender persons as a quasi-suspect class protected by heightened review in the Equal Protection analysis. "[L]ine-drawing" in "areas of regulation that affect transgender individuals"—like "[s]ports teams and sports competitions"— should not be removed from the "arena of public debate and legislative action" and vested in "one [unelected] Supreme Court" through heightened review. *Id.* "That is not how a constitutional democracy is supposed to work . . . when confronting evolving social norms." *Id.* Moreover, none of the "[o]ther considerations" support the creation of a "new suspect class," as transgender

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

persons are neither an immutable group, nor a politically powerless group. *Id.* at \*18-19. *L.W.* thus dictates that rational-basis review applies to L.E.'s transgender discrimination claim, and the challenged policies easily satisfy that standard.

*Third, L.W.*'s analysis undermines L.E.'s Title IX claim. The court held that *Bostock*'s "reasoning applies only to Title VII," not to Title IX. *Id.* at \*16. And it highlighted the "marked difference[s] in application of the [various] anti-discrimination principle[s]." *Id.* at \*17. Given these differences, L.E. admits that "Title IX[] allow[s] for sex-segregated sports teams" but nonetheless argues that enforcing a sex-separation policy against transgender persons violates the statute. L.E. Resp. to MSJ, D.E. 66, at 2069. That position is, in a word, "untenable." *D.H. v. Williamson Cnty. Bd. of Educ.*, 638 F. Supp. 3d 821, 835 (M.D. Tenn. 2022). "Any argument that [Title IX] merely allows for the existence of separate [sports teams], but does not allow schools to limit access to the [team] to the sex for which it is designated . . . contradict[s] the very purpose of allowing separate" teams at all. *Id.* And it would gut a landmark federal statute that "paved the way for significant increases in athletic participation for girls and women at all levels of education." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 818 (11th Cir. 2022) (Lagoa, J., specially concurring).

The Court should adhere to *L.W.*, reject L.E.'s pending claims, and enter judgment for Defendants.

## ARGUMENT

I. ***L.W.* Confirms That Defendants Are Entitled to Summary Judgment on L.E.'s Equal Protection Claim.**

*L.W.* makes clear that L.E.'s Equal Protection theory fails as a matter of law. The asserted claim "challenges [L.E.'s] categorical ineligibility to compete on the [Farragut] boys' golf team *because of* [*L.E.'s*] *transgender status*." L.E. Resp. to MSJ, D.E. 66, at 2048 (emphasis added).

L.E. explicitly disavowed any challenge to "the separation of interscholastic golf teams into boys' and girls' teams"—opting to pursue relief solely based on alleged transgender discrimination. *Id.* at 2047. Even so, L.E. seeks intermediate scrutiny under the theory that (1) "[d]iscrimination on the basis of transgender status constitutes sex discrimination," or (2) "[t]ransgender people constitute . . . a quasi-suspect class." L.E. MSJ Memo, D.E. 51, at 552, 554. *L.W.* rejects both arguments and holds that rational-basis review applies—a standard the challenged policy undoubtedly satisfies.

**A.    *L.W.* forecloses treatment of L.E.'s challenge as sex-based.**

*L.W.* rebuffed attempts to equate "[d]iscrimination on the basis of transgender status" with "sex discrimination" in the Equal Protection analysis. L.E. MSJ Memo, D.E. 51, at 552.

Sex-based discrimination under the Equal Protection Clause occurs only in limited circumstances: when the government uses "sex classifications to bestow unequal treatment on men and women." *L.W.*, 2023 WL 6321688 at *16. "Classification [itself] is not discrimination," *Caskey Baking Co. v. Virginia*, 313 U.S. 117, 121 (1941), and courts generally do not apply heightened scrutiny "[w]hen laws on their face treat both sexes equally," *L.W.*, 2023 WL 6321688 at *15.

A straightforward application of these principles sinks L.E.'s push for sex-based intermediate scrutiny. On their face and in application, the challenged policies "treat both sexes equally." *Id.* at *15. Under Tenn. Code Ann. § 49-6-310(a), *all students* receive a gender designation based on their biological sex, and under the TSSAA's policy, *all students* participate on the team that matches their biological sex. L.E. nowhere claims that the law or TSSAA's policy "appl[ies] one rule for males and another for females" or "prefer[s] one sex over the other." *L.W.*, 2023 WL 6321688 at *13. Just the opposite. Ironically, L.E. *faults* the challenged policy for treating the sexes *equally*, suggesting that biological girls should be allowed to play on boys' sports

teams even if biological boys are not allowed to play on girls' sports teams. L.E. MSJ Memo, D.E. 51, at 556-58; L.E. Resp. to MSJ, D.E. 66, at 2063-64. Those arguments only highlight that L.E.'s claim turns on transgender status.

The Sixth Circuit also cuts off any workarounds to the clear sex-discrimination rule set out in *L.W.* It clarified that "[f]or equal protection purposes, as opposed to conversational purposes, a law does not *classify* based on sex whenever it uses sex-related language." *L.W.*, 2023 WL 6321688 at *15 (cleaned up). That is, mere "references to 'enduring' differences between men and women do not trigger heightened review." *Id.* at *16 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)); *see also id.* at *14 (using 18 U.S.C. § 116(a)(1)'s reference to "*female* genital mutilation*" as an example of a statute that is *not* subject to heightened review (emphasis added)). A contrary approach would mean that every statute, regulation, or policy "having any relation to biological sex could not be regulated without running the gauntlet of skeptical judicial review." *Id.* at *15. That is not the law in the Sixth Circuit. *Id.*

Here, that means that L.E. cannot invoke intermediate scrutiny merely because § 49-6-310(a) and TSSAA's policy use "sex-related language"—male and female—or because the challenge has some "relation to biological sex." *Id.*; *see also* Tenn. Code Ann. § 68-33-103 (referencing "sex"); Ky. Rev. Stat. Ann. § 311.372(2) (same). The Court must analyze the actual challenge raised, and L.E. has disavowed any challenge to "the separation of interscholastic golf teams into boys' and girls' teams." L.E. Resp. to MSJ, D.E. 66, at 2047 (emphasis added). Rather, L.E. argues that the Equal Protection Clause prevents the exclusion of *transgender persons* from interscholastic sports teams that match their gender identity. *Id.* at 2048. To state the obvious, that is not an argument that the government has "bestow[ed] unequal treatment on men and women." *L.W.*, 2023 WL 6321688 at *16.

4

Further, the Sixth Circuit considered—and rejected—L.E.'s arguments based on *Bostock* and sex-stereotyping cases. L.E. MSJ Memo, D.E. 51, at 552-53. *First*, L.E. claims this suit involves a sex-based classification because, under *Bostock*, "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 552 (quoting *Bostock*, 140 S. Ct. at 1741). But the plaintiffs in *L.W.*—and the dissenting opinion in *L.W.*—made that exact same argument. Appellees' Br. in *Doe 1 v. Thornbury* (consolidated with *L.W. v. Skrmetti*), No. 23-5609, ECF No. 68, at 49; *L.W.*, 2023 WL 6321688 at *32 (White, J., dissenting). The *L.W.* majority flat out disagreed, holding that *Bostock*'s "text-driven reasoning" does not apply in the Equal Protection context. *L.W.*, 2023 WL 6321688 at *16.

That differentiation between the discrimination principles of Title VII and the Equal Protection Clause makes sense. Title VII "focuses on but-for discrimination," whereas the Equal Protection Clause "focuses on the denial of equal protection." *Id.* While *Bostock*'s chain of logic may make sense for Title VII's but-for analysis, it does not carry over to the Equal Protection analysis. "[T]his explains why Title VII covers disparate impact claims, and the Fourteenth Amendment does not." *Id.* (citations omitted). The "differently worded provisions" do not "mean the same thing." *Id.* Put simply, *Bostock*'s layered if-he-had-been-born-a-boy reasoning, 140 S. Ct. at 1741-42, does not apply in the Equal Protection context. *L.W.*, 2023 WL 6321688 at *16-17.

*L.W.* likewise forecloses L.E.'s reliance on *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), to argue that § 49-6-310(a) "improperly relies on sex stereotypes." L.E. MSJ Memo, D.E. 51, at 553. The *L.W.* dissent made the same argument relying on the same case, 2023 WL 6321688 at *29, *33-34 (White, J., dissenting), and, again, the *L.W.* majority disagreed. *Id.* at *17-18. The majority stated that *Smith*'s sex-stereotyping decision did not "extend . . . beyond claims about

discrimination over dress or appearance" and certainly "did not . . . create a new rule for transgender discrimination." *Id.* at *17. The court stressed that "[r]ecognizing and respecting biological sex differences does not amount to stereotyping." *Id.* Rather, it accords with reality. "[I]t is neither myth nor outdated stereotype that there are inherent differences between those born male and those born female." *Adams*, 57 F.4th at 819 (Lagoa, J., specially concurring).

The idea underlying sex-separated sports is not "to create or perpetuate . . . legal, social, [or] economic" hierarchies, but to accommodate the "enduring" "physical differences between men and women." *Virginia*, 518 U.S. at 533-34; *L.W.*, 2023 WL 6321688 at *18 (noting the importance of these "enduring" differences). The Supreme Court has "consistently upheld statutes where the gender classification . . . realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Ct.,* 450 U.S. 464, 469 (1981) (plurality opinion) (citing examples). By "fail[ing] to acknowledge even [the] most basic biological differences" separating the sexes, this suit "risks making the guarantee of equal protection superficial." *Nguyen v. INS*, 533 U.S. 53, 73 (2001).

The bottom line: L.E. does not argue that the challenged policies "bestow unequal treatment on men and women." *L.W.*, 2023 WL 6321688 at *16. The core submission is that § 49-6-310(a) and TSSAA's sex-separated sports policy improperly leave L.E. "ineligibil[e] to compete on the [Farragut] boys' golf team *because of his transgender status*." L.E. Resp. to MSJ, D.E. 66, at 2048 (emphasis added). But that is simply not a viable sex-discrimination claim after *L.W.*

**B.     L.E.'s transgender-based challenge does not trigger heightened scrutiny.**

That leaves L.E. to argue that "[t]ransgender people constitute . . . a quasi-suspect class," and, therefore, heightened scrutiny should apply. L.E. MSJ Memo, D.E. 51, at 554. After *L.W.*, though, that argument is a complete nonstarter.

*L.W.* held that "areas of regulation that affect transgender individuals"—like "[s]ports

teams and sports competitions"—should not be subject to heightened review. 2023 WL 6321688 at *18. The U.S. Constitution, the court explained, "does not offer a principled way to judge" the "line-drawing dilemmas" that accompany these issues. *Id.* If courts apply heightened scrutiny, it will only remove "trying policy choices" from the "arena of public debate and legislative action" and vest them in "one [unelected] Supreme Court." *Id.* "That is not how a constitutional democracy is supposed to work—or at least works best—when confronting evolving social norms," the court emphasized. *Id.*

What is more, *L.W.* concluded that the "[o]ther considerations that the [Supreme] Court has highlighted when recognizing a new suspect class" weigh against heightened review for transgender persons. *Id.* For one, transgender persons do not "exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group." *Id.* (quoting *Bowen v. Gilliard*, 483 U.S. 587, 602 (1987)). Quite the contrary, transgender status "is not definitively ascertainable at the moment of birth," "is not necessarily immutable," and is not the creator of a "discrete group" because "a huge variety of gender identities and expressions" exist. *Id.* (citations and quotations omitted).

*L.W.* further held that "[w]hatever may have been true in the past about our society's treatment of individuals with gender dysphoria," transgender persons are "[n]ot a politically powerless group" today. *Id.* at *19. There is simply no way "to maintain that the democratic process remains broken on th[e transgender-sports issue]." *Id.* Over fifteen States have written policies allowing transgender individuals to participate in interscholastic sports that match their gender identity.[2] On the other side of the issue, over twenty States have policies limiting such

---

[2] *See, e.g.*, Cal. Educ. Code § 221.5(f); Colo. High Sch. Activities Assoc., *CHSAA Bylaws 2023-2024*, pp. 158-60, https://chsaanow.com/sports/2021/7/19/bylaws.aspx (last visited Oct. 9, 2023); Connecticut Interscholastic Athletic Conference, *Reference Guide for Transgender Policy*,

participation.[3]   And, at the federal level, hearings on this issue have been held before the U.S.

https://www.casciac.org/pdfs/Principal_Transgender_Discussion_Quick_Reference_Guide.pdf (last visited Oct. 9, 2023); Delaware Interscholastic Athletic Assoc., *FAQs Concerning 1008 DIAA High School Interscholastic Athletics*, https://education.delaware.gov/diaa/wp-content/uploads/sites/2/2022/01/faqs_1008_10-5-21.pdf (last visited Oct. 9, 2023); District of Columbia State Athletic Assoc., *2022-23 Member Handbook*, pp. 54-56, https://cdn1.sportngin.com/attachments/document/be73-1688853/DCSAA_Handbook_2022-23_8_.pdf?_gl=1*ocs3wy*_ga*MTI4OTQxNTIzLjE1ODE1MzMyNzI.*_ga_PQ25JN9PJ8*MTY4NDUyMzgxMS4xNDAuMS4xNjg0NTIzODI2LjAuMC4w#_ga=2.144211509.1635964027.1684497797-1250528970.1582296369 (last visited Oct. 9, 2023); Illinois High Sch. Assoc., *ISHA Handbook (2023-2024)*, pp. 117-18, https://www.ihsa.org/documents/flip/Handbook/Current/Handbook%209-20.html (last visited Oct. 9, 2023); Maryland Pub. Secondary Sch. Athletic Assoc., *MPSSAA Transgender Person Guidance for Participation in Interscholastic Athletics*, https://irp.cdn-website.com/ee0a988b/files/uploaded/2bc3fc_c27051cd7b4a48759fcc5c77e34f7fab.pdf (last visited Oct. 9, 2023); Massachusetts Dep't of Elementary and Secondary Educ., *Nondiscrimination on the Basis of Gender Identity*, https://www.transathlete.com/_files/ugd/2bc3fc_447f7b8e8a44c835e855c51087a5a6d9.pdf (last visited Oct. 9, 2023); Minnesota High Sch. Sports League, *300.00 Bylaws: Administration of Student Eligibility*, https://www.mshsl.org/sites/default/files/2023-08/MSHSL%20Handbook%20300%20Series.pdf (last visited Oct. 9, 2023); Nevada Interscholastic Activities Assoc., *NIAA Transgender Participation Position Statement and Policy*, https://www.niaa.com/publications/Transgender_Participation__Policy_NACRevised11-2-21.pdf (last visited Oct. 9, 2023); New Hampshire Interscholastic Athletic Assoc., *By-Law Article II Sect. 21: Policy Statement and School Recommendation Regarding Transgender Participation*, https://www.nhiaa.org/ckfinder/userfiles/files/4HB%2023-24%20%20II%20Eligibility.pdf (last visited Oct. 9, 2023); New Jersey State Interscholastic Athletic Assoc., *Transgender Policy – Frequently Asked Questions*, https://www.njsiaa.org/sites/default/files/documents/2022-06/Transgender%20FAQ%27s%20Approved%206-8-22.pdf (last visited Oct. 9, 2023); New York State Public High Sch. Athletic Assoc., *New York State Public High School Athletic Association Transgender Guidelines*, https://www.schoolhealthny.com/cms/lib/NY01832015/Centricity/Domain/85/NYSPHSAA%20Transgender%20Policy%20Approved%20July%202015.pdf (last visited Oct. 9, 2023); Oregon Sch. Activities Assoc., *2023-2024 Oregon School Activities Association Handbook*, pp. 81-82, https://osaa.org/docs/handbooks/osaahandbook.pdf (last visited Oct. 9, 2023); Rhode Island Interscholastic League, *Rules and Regulations Art. 3, Sec. 3.B.*, https://www.riil.org/page/3033 (last visited Oct. 9, 2023); Vermont Principals' Assoc., *Vermont Principals' Association Athletic Policies*, p. 4, https://docs.google.com/document/d/1_DMlEHHX3zIzO2jgqzaXLv2Puklx-o4y7IriQtRjQ0I/edit#heading=h.81akejo0tz06 (last visited Oct. 9, 2023); Washington Interscholastic Athletic Assoc., *2023-24 WIAA Handbook*, pp. 36-37, https://assets-rst7.rschooltoday.com/rst7files/uploads/sites/652/2023/08/14084048/2023-24-HANDBOOK-8-4-2023-1.pdf (last visited Oct. 9, 2023).

[3] *See, e.g.*, Ala. Code § 16-1-52; Ariz. Rev. Stat. Ann. § 15-120.02; Ark. Code Ann. § 6-1-107; Fla. Stat. § 1006.205; Idaho Code § 33-6203; Ind. Code § 20-33-13-4; Iowa Code § 261I.2; Kan. Stat. Ann. ch. 13 § 3; Ky. Rev. Stat. Ann. § 156.070(2)(g); La. Stat. Ann. § 4:444; Miss. Code. Ann. § 37-97-1; Mo. Rev. Stat. § 163.048; Mont. Code Ann. § 20-7-1306; N.C. Gen. Stat. Ann.

8

Congress. *See, e.g.*, *Protection of Women and Girls in Sports Act of 2023, Hearing on H.R. 734 and H.J. Res. 42 Before the H. Rules Comm.*, 118th Cong. (2023). "These are not the hallmarks of a skewed or unfair political process—and [L.E.] offer[s] no explanation for inviting a greater political dysfunction problem: the difficulty of amending the Constitution if the federal courts err in choosing to occupy the field." *L.W.*, 2023 WL 6321688 at *19.

Ultimately, "[t]he bar for recognizing a new suspect class is a high one." *Id.* at *18. Rightfully so: "Constitutionalizing new areas of American life is not something federal courts should do lightly, particularly when the 'States are currently engaged in serious, thoughtful' debates about the issue." *Id.* at *6 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). The Supreme Court "has not recognized any new constitutionally protected classes in over four decades, and instead has repeatedly declined to do so." *Id.* at *18 (quoting *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015)). And the Sixth Circuit has decided not to break new ground in cases alleging discrimination against transgender persons. "[R]ational basis review applies" to L.E.'s challenge. *Id.*

**C.  The challenged law and policy easily satisfy rational-basis review.**

Both § 49-6-310(a) and TSSAA's sex-separated sports policy clear rational-basis review. Under that standard, the challenged law and policy are "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 622 (6th Cir. 1997) (quotations omitted). This test requires the Court to uphold the challenged law "if there is any reasonably conceivable state of facts" or "plausible" justification that rationally connects the law's classification to legitimate

---

§ 115C-12(23); N.D. Cent. Code § 15.1-41-02; Okla. Stat. tit. 70, § 27-106, S.C. Code Ann. § 59-1-500; S.D. Codified Laws § 13-67-1; Tex. Educ. Code Ann. 33.0834; Utah Code Ann. § 53G-6-902; W. Va. Code § 18-2-25d; Wyo. Stat. Ann. § 21-25-102.

government ends. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (citation and quotation omitted). "[T]hose attacking the rationality of the . . . classification have the burden to negative every conceivable basis which might support it." *Id.* at 315 (quotations omitted).

This any-conceivable-basis standard "applies whether the plaintiff challenges a statute on its face, [or] as applied." *Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006) (cleaned up). The law requires only that a law be "rational . . . at a class-based level," not on "a person-by-person basis." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 86 (2000). Even if the asserted "reasons" justifying a law are "probably not true . . . in the majority of cases," they will be upheld if they have any "rational basis." *Id.*; *see also Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316-17, (1976) (upholding as rational the mandatory retirement of police officers at age 50 without addressing whether the measure was rational as applied to the plaintiff); *see also Interstate Towing Ass'n, Inc. v. City of Cincinnati*, 6 F.3d 1154, 1166-67 (6th Cir. 1993) (similar).

Here, "[p]lenty of rational bases exist for the[ challenged] law[], with or without evidence." *See L.W.*, 2023 WL 6321688 at *20. Indeed, § 49-6-310(a) and TSSAA's sex-separated sports policy further interests so weighty that they would satisfy even intermediate scrutiny. *See Nguyen*, 533 U.S. at 70. The law and policy clarify the meaning of "gender," protect opportunities for girls in interscholastic athletics, reduce the risk of injury, and convey an educational message on the meaning of "sex" and "gender." *See* State MSJ Memo, D.E. 56, at 1432-37; State Resp. to L.E. MSJ, D.E. 70, at 2128-33. And many of these justifications bear directly on the facts presented. Any notion that there is no "conceivable basis which might support" the challenged practice does not pass the straight-face test. *Beach*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).

*L.W.* also refutes L.E.'s passing suggestion that sex-separated sports policies are driven by

animus towards transgender people. L.E. Resp. to MSJ, D.E. 66, at 2065-66. The Sixth Circuit recognized that "[a]ssessing legislative motives or purposes [driving a law] is a hazardous matter," so "[i]nstead of asking judges to read the hearts and minds of legislators, the inquiry asks whether the law at issue is inexplicable by anything but animus." *L.W.*, 2023 WL 6321688 at *19 (quotations omitted). That limited inquiry makes sense. "[I]ndividual legislators may have voted for the statute for a variety of reasons," *Michael M.*, 450 U.S. at 469-70 (plurality), and attempts to ascertain these "motivation[s] represent a substantial intrusion into the workings of other branches of government," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977).

Here, the challenged policies are "[]explicable" by a number of rationales other than "animus." *L.W.*, 2023 WL 6321688 at *19. As outlined above, at least four separate justifications support the challenged law and policy. *See* State MSJ Memo, D.E. 56, at 1432-37; State Resp. to L.E. MSJ, D.E. 70, at 2128-33. Under *L.W.*, that ends the inquiry.

Regardless, L.E.'s arguments for animus go nowhere. L.E. Resp. to MSJ, D.E. 66, at 2066-67. The statements of two legislators quoted by L.E. show no animus whatsoever, *id.*, and even if they did, *L.W.* and the Supreme Court have eschewed reference to the motives of individual legislators in assessing animus, 2023 WL 6321688 at *19. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). L.E.'s reference to other legislation affecting transgender persons likewise fails, as those laws have been upheld as likely constitutional and *not* driven by animus. *Compare* L.E. Resp. to MSJ, D.E. 66, at 2066-67 (pointing to Tennessee's law "restricting . . . access to health care" and "limiting transgender youth's access to school restrooms"), *with L.W.*

2023 WL 6321688 at *23 (finding no animus and likelihood of constitutionality for health care law) and *D.H.*, 638 F. Supp. 3d at 837 (same for bathroom law). None of this comes close to overcoming the heavy "presumption of legislative good faith" to which the Tennessee legislature is entitled. *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

Rational basis review "is a paradigm of judicial restraint," not a "license for courts to judge the wisdom, fairness, or logic of [policy] choices." *Beach*, 508 U.S. at 313-14. Courts "hardly ever strike[] down a policy as illegitimate under rational basis scrutiny," *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018), and this is not the case that calls for that extraordinary measure. L.E. may disagree with the policy choices regarding transgender persons' access to interscholastic sports teams that match their gender identity, but the challenged practice undoubtedly passes constitutional review.

## II. *L.W.* Confirms That Defendants Are Entitled to Summary Judgment on L.E.'s Title IX Claim.

Although *L.W.* did not involve a statutory claim, its analysis nonetheless undercuts both arguments that L.E. advances in support of the Title IX claim.

*First*, the decision thwarts L.E.'s reliance on *Bostock* for the proposition that, under Title IX, "discrimination on the basis of transgender status constitutes sex discrimination." L.E. MSJ Memo, D.E. 51, at 560. *L.W.* forcefully declared that *Bostock*'s "reasoning applies only to Title VII." 2023 WL 6321688 at *16. And, when doing so, the court specifically referenced prior precedent "reasoning that Title VII analysis *does not apply to Title IX*." *Id.* (citing *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021)) (emphasis added); *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("[T]he rule in *Bostock* extends no further than Title VII."). Whatever "guidance" courts take from Title VII, *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 349-50 (6th Cir. 2020), clearly does not include the reasoning of *Bostock*.

That delineation between Title VII and Title IX makes sense because there are "marked difference[s] in application of [the two] anti-discrimination principle[s]." *L.W.*, 2023 WL 6321688 at *17. Whereas Title VII prohibits certain actions "because of … sex," full stop, 42 U.S.C. § 2000e-2, Title IX explicitly *permits* separation "on the basis of sex" in numerous circumstances, 20 U.S.C. § 1681(a)(1)-(9). Indeed, Title IX states that its prohibition on "discrimination" "on the basis of sex," *id.* § 1681(a), shall not be construed to prohibit the "maintain[ance of] separate living facilities for the different sexes," *id.* § 1686. And Title IX's implementing regulations specifically *allow* institutions to "operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill," like golf, "or the activity is a contact sport." 34 C.F.R. § 106.41(b). "Title IX is clear that not all *differentiation* based on sex is impermissible *discrimination*." *D.H.*, 638 F. Supp. 3d at 835 (emphasis added). *Bostock*'s reasoning cannot be grafted on to this very different statutory structure.

Boxed in by Title IX's framework, L.E. admits that "Title IX[] allow[s] for sex-segregated sports teams" but suggests that enforcing a sex-separated sports policy to "prohibit[] [L.E.] from playing on the boys' team" nonetheless violates Title IX. L.E. Resp. to MSJ, D.E. 66, at 2069. To state that argument is to refute it. The notion that the statute allows schools to designate "sex-separated sports teams," L.E. Resp. to MSJ, D.E. 66, at 2069, but not "limit access to the [team] to the sex for which it is designated . . . contradict[s] the very purpose of allowing separate" sports teams. *D.H.*, 638 F. Supp. 3d at 835; *see also Adams*, 57 F.4th at 814 (11th Cir. 2022). Indeed, a judge of this court recently rejected a nearly identical argument in a Title IX challenge involving sex-separated bathrooms. *D.H.*, 638 F. Supp. 3d at 835; *see also D.H. v. Williamson Cnty. Bd. of Educ.*, 2023 WL 6302148, at *5 (M.D. Tenn. Sept. 27, 2023). These recent precedents reveal the obvious flaws in L.E.'s attempt to conjure sex-discrimination under Title IX through *Bostock*.

13

*Second*, as discussed above, *L.W.* spurned L.E.'s sex-stereotyping argument. L.E. Resp. to MSJ, D.E. 66, at 2069; *see also supra* 5-6. Neither § 49-6-310(a) nor TSSAA's sex-separated sports policy "depend[s] in any way on how students act or identify." *Adams*, 57 F.4th at 809. They merely "[r]ecogniz[e] and respect[] biological sex differences" between males and females. *L.W.*, 2023 WL 6321688 at *18. Far from an "outdated stereotype," it is common sense that "there are inherent differences between those born male and those born female" that result in "physiological advantages in many sports." *Adams*, 57 F.4th at 819 (Lagoa, J., specially concurring). L.E.'s effort to treat the sheer recognition of biological differences as stereotypes misses the mark and, if adopted, "would operate to obscure those misconceptions and prejudices that are real." *Nguyen*, 533 U.S. at 73.

With L.E.'s only two Title IX arguments dispositively refuted by the Sixth Circuit in *L.W.*, the Court should dismiss Plaintiff's statutory claim and grant the Defendants' motions for summary judgment.

## CONCLUSION

This Court should grant Defendants' motions for summary judgment and enter judgment for Defendants.

Respectfully submitted,

DAVID M. SANDERS, BPR # 016885
Senior Deputy Law Director

JESSICA JERNIGAN-JOHNSON,
BPR # 032192
Deputy Law Director

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *J. Matthew Rice*
J. MATTHEW RICE, BPR # 040032
Associate Solicitor General

JOSHUA D. MINCHIN, BPR # 038746
Honors Fellow, Office of the Solicitor
General

City-County Building
400 Main Street
Knoxville, Tennessee  37902
Jessica.Johnson@knoxcounty.org
(865) 215-2327

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee  37202
Matt.Rice@ag.tn.gov
(615) 532-6026

*Counsel for Defendants, Knox County Board
of Education, Knox County Schools, and
Dr. Jon Rysewyk*

*Counsel for Governor Lee, Commissioner
Reynolds, Dr. Morrison, and the individual
members of the Tennessee State Board of
Education, in their official capacities, and
the Tennessee State Board of Education*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this Supplemental Brief has been served through the e-filing system on October 20, 2023, to:

Leslie Cooper
Lisa Nowlin-Sohl
Taylor Brown
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004

Sasha Buchert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND INC.
1776 K St. NW, 8th Floor
Washington, DC 20006-5500

Tara L. Borelli
Carl S. Charles
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND INC.
1 West Court Sq., Ste. 105
Decatur, GA 30030-2556

Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich St., 45th Floor
New York, NY 10007

Britany Riley-Swanbeck
Emily L. Stark
Samuel M. Strongin
Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006

Matthew D. Benedetto
WILMER & LEE, P.A.
100 Washington St., Ste. 200
Huntsville, AL 35804

Stella Yarbrough
Lucas Cameron-Vaughn
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212

David M. Sanders
Senior Deputy Law Director
Jessica Jernigan-Johnson
Deputy Law Director
Knox County, Tennessee
400 W. Main St., Suite 612
City-County Building
Knoxville, TN 37902

/s/ *J. Matthew Rice*
J. Matthew Rice