IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
TENNESSEE NASHVILLE DIVISION

L.E., by his next friends and parents,
SHELLEY ESQUIVEL and MARIO
ESQUIVEL,

    Plaintiff,

v.

BILL LEE, et al.,

    Defendants.

Case No. 3:21-cv-00835

Chief Judge Waverly D. Crenshaw Jr.
Magistrate Judge Alistair E. Newbern

**SUPPLEMENTAL BRIEF OF PLAINTIFF L.E.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 4

CONCLUSION ................................................................................................................. 7

# TABLE OF AUTHORITIES

## CASES

Page(s)

*A.C. ex rel. M.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760
   (7th Cir. 2023)...........................................................................................................6

*Adams ex rel. Kasper v. School Board of St. John's County*, 57 F.4th 791 (11th
   Cir. 2022) (en banc) ..............................................................................................4, 5

*Bostock v. Clayton County*, 140 S.Ct. 1731 (2020) ...........................................................3

*D.H. ex rel. A.H. v. Williamson County Board of Education*, 2023 WL 6302148
   (M.D. Tenn. Sept. 27, 2023) .....................................................................................5

*Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022)......................2

*Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023) ..........................5

*Geduldig v. Aiello*, 417 U.S. 484 (1974)............................................................................2

*Grimm v. Gloucester County School Board*,
   972 F.3d 586 (4th Cir. 2020) .................................................................................5, 7

*Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023)...................................................................6

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) .........................................................3

*L.W. ex rel. Williams v. Skrmetti*, --- F.4th ---, 2023 WL 6321688 (Sept. 28, 2023) ............ *passim*

*Romer v. Evans*, 517 U.S. 620 (1996)................................................................................6

*United States v. Gleaves*, --- F. Supp.3d ---, 2023 WL 1791866 (M.D. Tenn. Feb.
   6, 2023) ......................................................................................................................1

## STATUTES

20 U.S.C. §1681...................................................................................................................6

42 U.S.C. §2000e-2..............................................................................................................6

Plaintiff L.E., by his next friends and parents, Shelley Esquivel and Mario Esquivel, respectfully submits this supplemental brief pursuant to the Court's October 6, 2023 order, Dkt. 97, to discuss the impact of *L.W. ex rel. Williams v. Skrmetti*, --- F.4th ---, 2023 WL 6321688 (Sept. 28, 2023), on this case. After *L.W.*, SB 228's exclusion of transgender student-athletes from participating on the interscholastic sports team consistent with their gender identity remains subject to equal protection heightened scrutiny because the law classifies based on sex and, in any event, excluding transgender boys from boys' teams would fail even rational-basis review. Additionally, *L.W.* did not involve a Title IX claim; thus, the court's decision does not impact the analysis of that claim. L.E. remains entitled to summary judgment in his favor.[1]

## BACKGROUND

*L.W.* involved a challenge to two state laws "limiting certain sex-transition treatments for minors experiencing gender dysphoria." 2023 WL 6321688, at *1. The laws forbid healthcare providers in the two states (Tennessee and Kentucky) from providing various medical treatments (known collectively as "gender-affirming medical care") to minors to enable them to live consistently with their gender identity. *Id.* at *3-5. Plaintiffs from each state challenged the laws under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Id.* at *4-5. As relevant here, the equal protection arguments asserted that the bans were subject to (and failed) heightened scrutiny both because they discriminated on the basis of sex and because the bans discriminated based on the quasi-suspect classification of transgender status. *See id.* Both

---

[1] L.E. also preserves, for subsequent appellate review, arguments rooted in the proposition that *L.W.* was wrongly decided. L.E. believes that decision turned on numerous errors of law, including with respect to the legal issues pertinent to this case, and the panel's disregard of the factual record. For present purposes, however, L.E. of course recognizes that "this Court is bound by Sixth Circuit precedent," *United States v. Gleaves*, --- F. Supp.3d ---, 2023 WL 1791866, at *3 (M.D. Tenn. Feb. 6, 2023) (Crenshaw, C.J.). This brief thus focuses solely on how L.E. is still entitled to summary judgment after *L.W.*

1

sets of plaintiffs obtained preliminary injunctions in district court, but the Sixth Circuit vacated those injunctions. *Id.* at *23.

Central to *L.W.*'s ultimate conclusion that the plaintiffs were unlikely to succeed on their equal protection claims was the court's holding that the bans are not subject to heightened scrutiny, but instead needed to merely "rationally relate[] to a legitimate state interest" in order to comply with the Equal Protection Clause. *L.W.*, 2023 WL 6321688, at *12. The panel acknowledged that sex-based classifications "receive[] heightened review," but reasoned that "no such form of discrimination occurs in either law." *Id.* at *13. This was because, according to the panel, all minors were denied certain medical treatments for gender dysphoria, regardless of their sex. The court reasoned that the fact that cisgender boys can receive testosterone to treat other conditions but a transgender boy could not be provided testosterone to treat gender dysphoria is not sex discrimination because the uses of the drugs to treat different conditions is not the same treatment. *Id.* at *14 (stating that using testosterone or estrogen to treat gender dysphoria is a "different procedure" than using these medications to treat other conditions).

Viewed this way, the panel treated the laws in question as regulating medical procedures, e.g., using estrogen to transition from male to female and using testosterone to transition from female to male, that were unique to each sex. And under the panel's interpretation of the Supreme Court's decisions in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), and *Geduldig v. Aiello*, 417 U.S. 484 (1974), "laws[] which restrict medical procedures unique to each sex[] do not require [heightened] scrutiny." *L.W.*, 2023 WL 6321688, at *14. In sum, the court deemed the laws at issue to classify based on medical treatment, not sex. *Id.* at *15 ("One simply cannot define, or create, a protected class solely by the nature of a denied medical benefit: in this instance childhood treatment for gender dysphoria."). The court

2

recognized that "States may not permit sex-based discrimination . . . on the assumption that men as a group and women as a group would be disadvantaged to a similar degree." *Id.* (citing, *e.g.*, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140-142 (1994)). But the court held that the state laws at issue in the case "do not disadvantage 'persons' based on their sex" because the "availability of testosterone, estrogen, and puberty blockers … turn[s] on … the age of the individual and the risk-reward assessment of treating this medical condition (as opposed to another) with these procedures." *Id.*

The panel deemed the Supreme Court's holding in *Bostock v. Clayton County*, 140 S.Ct. 1731 (2020)—that Title VII's prohibition against sex discrimination in employment applies to claims of discrimination on the basis of transgender status, *id.* at 1737—inapplicable to equal protection claims because "the language of the statute and the Constitution" diverged from each other in significant ways, including that Title VII has codified defenses. *L.W.*, 2023 6321688, at *16-17. Additionally, the panel distinguished *Bostock* by reiterating that the laws at issue in LW "merely deny the same medical treatments to all children facing gender dysphoria." *Id.* at 17.

In addition to holding that the challenged medical regulations in L.W. do not classify on the basis of sex, the court rejected the argument that laws that classify based on transgender status are subject to heightened scrutiny because such classifications are quasi-suspect. *L.W.*, 2023 WL 6321688, at *18-19.

Finally, after holding that heightened scrutiny did not apply, *L.W.* held that "rational bases exist for [the challenged] laws," citing the States' stated assessment of the risks and evidence of the efficacy of the prohibited treatments. *See* 2023 WL 6321688, at *20.

3

# ARGUMENT

L.E.'s briefing in support of his motion for summary judgment explains why he is entitled to judgment as a matter of law. Dkt. 51, 66, 75. Nothing in *L.W.* changes that basic conclusion. For three reasons, the analysis in *L.W.* is inapplicable here.

*First*, *L.W.* does not change the fact that heightened scrutiny applies to SB 228 because SB 228 on its face classifies students based on sex, with L.E. being denied the ability to participate on the boy's golf team solely because his sex assigned at birth was female. While Plaintiffs disagree with the *L.W.* panel's analysis, the court held that the medical regulation at issue did not classify based on sex, reasoning that the salient factor for determining the legality of certain treatments was what medical condition the treatments were designed to ameliorate. *See L.W.*, 2023 WL 6321688, at *15 ("One simply cannot define, or create, a protected class *solely* by the nature of a denied medical benefit: in this instance childhood treatment for gender dysphoria.").

Other courts have recognized that even if bans on gender-affirming medical care are not deemed to constitute a sex classification subject to heightened scrutiny, assignments of transgender people to a particular sex-segregated category do. For example, the Eleventh Circuit held late last year that a "policy requir[ing] 'biological boys' and 'biological girls'—in reference to their sex assigned at birth—to use either bathrooms that correspond to their biological sex or sex-neutral bathrooms" was "a sex-based classification," and thus "subject to intermediate scrutiny." *Adams ex rel. Kasper v. School Bd. of St. John's Cty.*, 57 F.4th 791, 801, 803 (11th Cir. 2022) (en banc). Several months after *Adams*, the Eleventh Circuit —which was of course bound by *Adams*—"reject[ed] the view that [a ban on gender-affirming care for minors] amounts to a sex-based classification subject to intermediate scrutiny." *Eknes-Tucker v. Governor of*

*Alabama*, 80 F.4th 1205, 1227-1228 (11th Cir. 2023). While Plaintiffs also believe the analysis in *Eknes-Tucker* is incorrect, the precedent in that circuit illustrates that such a decision does not bear upon classifications involving sex-separated facilities or programs. *See also D.H. ex rel. A.H. v. Williamson Cty. Bd. of Educ.*, 2023 WL 6302148, at *4 n.2 (M.D. Tenn. Sept. 27, 2023) (distinguishing the *L.W.* motions panel opinion because "the bathroom policy clearly involves classification based on sex," meaning "intermediate scrutiny applies").

SB 228, like the bathroom policies at issue in *Adams* and *D.H.*, expressly assigns students to a sex-segregated category (here, interscholastic athletic teams) based on their sex assigned at birth. Dkt. 51 at 5. Because sex assigned at birth is the determining factor regarding which interscholastic sports team L.E. can participate on, just as sex assigned at birth was the determining factor regarding which bathroom the plaintiffs in *Adams* and *D.H.* were able to use, intermediate scrutiny applies. While *Adams* concluded that privacy interests asserted by the school *satisfied* heightened scrutiny in that case, 57 F.4th at 803, heightened scrutiny was the applicable standard, as it is here. And L.E. has explained that applying SB 228 to a transgender boy to keep him off the boys' golf team does not substantially further any important government interest. *E.g.*, Dkt. 51 at 15-18.[2]

*Second*, even if rational-basis review were the applicable standard, the application of SB 228 to exclude L.E. from the boys' golf team does not survive. The *L.W.* panel's analysis of the rationales asserted in the support of the bans on gender-affirming medical care has no application

---

[2] This is not to say that maintaining sex-segregated sports teams in an of itself is a violation of Title IX. "In the Title IX context, discrimination 'mean[s] treating that individual worse than others who are similarly situated.'" *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020). Here, as discussed in his summary judgment briefing, excluding L.E. from the boys' golf team because he is a transgender boy treats him worse than the cisgender boys with whom he is similarly situated and causes him significant harm. Dkt. 51 at 20-22.

5

to SB 228 and its application to L.E. and the purported governmental interests supporting it. SB 228 excluded L.E., a *transgender boy*, from his school's *boys'* golf team even though the only bases ever given for enacting SB 228 pertained to concerns regarding the participation of *transgender girls* in *girls'* interscholastic athletic teams. *See* Dkt. 52 ¶¶48-54; *see also* Dkt. 51 at 16-18. Far from furthering any legitimate state interest, the application of SB 228 to L.E. "is so far removed from [the] particular justification[s]" put forth in support that it is "impossible to credit them," *Romer v. Evans*, 517 U.S. 620, 635 (1996). *See* Dkt. 66 at 25-26.

*Third*, *L.W.* does not affect L.E.'s Title IX claim. While *L.W.* held that the Supreme Court's analysis in *Bostock* was inapplicable to the equal protection claim in that case, citing both textual reasons and the medical context in which *L.W.* arose, *supra* p.3, the court did not analyze whether the reasoning of *Bostock* is applicable to Title IX's prohibition against sex discrimination or the context of sex-segregated categories like bathrooms and sports teams.

As discussed above, the context of sex-segregated categories indisputably constitutes differential treatment on the basis of sex. And whatever the differences between the Equal Protection Clause's text and Title VII's, *see L.W.*, 2023 WL 6321688, at *16 (comparing Title VII's language with the Equal Protection Clause), the language of Title IX is materially identical to Title VII. Title VII bans discrimination "because of … sex," 42 U.S.C. § 2000e-2, while Title IX forbids discrimination "on the basis of sex," 20 U.S.C. § 1681a. As L.E. has explained, Sixth Circuit precedent treats these two phrases the same. *See* Dkt. 66 at 30 n.13; *see also Hecox v. Little*, 79 F.4th 1009, 1026-1027 (9th Cir. 2023) (applying *Bostock*'s reasoning to Title IX in the sex-segregated interscholastic sports team context); *A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *petition for cert. filed* (U.S. Oct. 11, 2023)

6

(No. 23-392) (same, in the bathroom context); *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020) (same).

## CONCLUSION

L.E.'s motion for summary judgment should be granted and Defendants' motions for summary judgment should be denied.

Dated: October 20, 2023

Leslie Cooper (*pro hac vice*)
L. Nowlin-Sohl (*pro hac vice*)
Taylor Brown (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lcooper@aclu.org
lnowlin-sohl@aclu.org
tbrown@aclu.org

Tara L. Borelli (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
1 West Court Square, Suite 105
Decatur, GA 30030-2556
Tel: (404) 897-1880
Fax: (404) 506-9320
tborelli@lambdalegal.org
ccharles@lambdalegal.org

Sasha Buchert (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
1776 K Street NW, 8th Floor
Washington, DC 20006-5500
Tel: (202) 804-6245
sbuchert@lambdalegal.org

Respectfully submitted,

/s/ Alan Schoenfeld
Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street, 45th Floor
New York, NY 10007
Tel: (212) 937-7294
alan.schoenfeld@wilmerhale.com

Stella Yarbrough (No. 33637)
Lucas Cameron-Vaughn (No. 036284)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Tel: (615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org

Jennifer Milici (*pro hac vice*)
Emily L. Stark (*pro hac vice*)
Samuel M. Strongin (*pro hac vice*)
John W. O'Toole (*pro hac vice*)
Britany Riley-Swanbeck (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6000
jennifer.milici@wilmerhale.com
emily.stark@wilmerhale.com
samuel.strongin@wilmerhale.com
john.o'toole@wilmerahle.com
britany.riley-swanbeck@wilmerhale.com

*Attorneys for Plaintiff L.E., by his next friends and parents, Shelley Esquivel and Mario Esquivel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2023, a true and correct copy of the foregoing was served on the below counsel for Defendants, via the Court's ECF/CM system.

ephanie A. Bergmeyer  
Senior Assistant Attorney General  
Office of Tennessee Attorney General  
P.O. Box 20207  
Nashville, Tennessee 37202  
Stephanie.Bergmeyer@ag.tn.gov  
(615) 741-6828  

J. Matthew Rice  
Joshua Daniel Minchin  
Assistant Solicitor General  
Office of Tennessee Attorney General and Reporter  
P.O. Box 20207  
Nashville, Tennessee 37202  
Matt.Rice@ag.tn.gov  
(615) 532-6026  

David M. Sanders  
Senior Deputy Law Director, Knox County  
Suite 612, City-County Building  
400 Main Street  
Knoxville, TN 37902  
David.Sanders@knoxcounty.org  
(865) 215-2327  

Jessica Jernigan-Johnson  
Deputy Law Director, Knox County  
Suite 612, City-County Building  
400 Main Street  
Knoxville, TN 37902  
Jessica.Johnson@knoxcounty.org  
(865) 215-2327  

/s/ Alan Schoenfeld  
Alan Schoenfeld