IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.E., by his next friends and parents, SHELLEY ESQUIVEL and MARIO ESQUIVEL,<br><br>  Plaintiff,<br><br>v.<br><br>BILL LEE, et al.,<br><br>  Defendants. | Case No. 3:21-cv-00835<br><br>Chief Judge Waverly D. Crenshaw Jr.<br>Magistrate Judge Alistair E. Newbern |

**SUPPLEMENTAL RESPONSE BRIEF OF PLAINTIFF L.E.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
ARGUMENT .......................................................................................................................... 1
I.      SB 228 VIOLATES THE EQUAL PROTECTION CLAUSE ........................................................ 1
        A.      SB 228 Is Subject To Heightened Scrutiny Because It Classifies Based
              On Sex ................................................................................................................ 1
        B.      SB 228 Fails Any Level Of Scrutiny ................................................................. 3
II.     SB 228 VIOLATES TITLE IX ............................................................................................... 4
CONCLUSION ....................................................................................................................... 7

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187 (1991)............................................5

*Bostock v. Clayton County*, 140 S.Ct. 1731 (2020) ......................................................................4

*D.H. ex rel. A.H. v. Williamson County Board of Education*, 2023 WL 6302148
   (M.D. Tenn. Sept. 27, 2023)......................................................................................................6

*Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022).....................................................................................6

*Dothard v. Rawlinson*, 433 U.S. 321 (1977).....................................................................................5

*Grimm v. Gloucester County School Board*,
   972 F.3d 586 (4th Cir. 2020) ....................................................................................................6

*Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023)..................................................................................6

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994).....................................................................1, 2

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) .................................................................3

*L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, (6th Cir., 2023) .................................................1, 5

*Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) .......................................................................5

*Michael M. v. Superior Court*, 450 U.S. 464 (1981) .......................................................................2

*Nguyen v. INS*, 533 U.S. 53 (2001)..................................................................................................2

*Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318 (6th Cir. 2021) .............................................................5

*Powers v. Ohio*, 499 U.S. 400 (1991) ...............................................................................................2

*Romer v. Evans*, 517 U.S. 620 (1996)...........................................................................................3, 4

*United States v. Virginia*, 518 U.S. 515 (1996) ...............................................................................2

## STATUTES

42 U.S.C. §2000e-2............................................................................................................................5

20 U.S.C. §1681.................................................................................................................................6

Pursuant to the Court's October 6, 2023 order, Dkt. 97, Plaintiff L.E., by his next friends and parents, Shelley Esquivel and Mario Esquivel, respectfully submits this response to Defendants' October 20, 2023 supplemental brief, Dkt. 101 ("DSB"). As explained below, none of the arguments Defendants raise in their supplemental brief provides a basis for summary judgment in their favor or changes the fact that summary judgment should be granted to Plaintiff.

## ARGUMENT

### I. SB 228 VIOLATES THE EQUAL PROTECTION CLAUSE

#### A. SB 228 Is Subject To Heightened Scrutiny Because It Classifies Based On Sex

Defendants' effort to avoid the application of heightened scrutiny of SB 228's exclusion of L.E. from the boy's golf team based on *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), is not persuasive. Defendants ignore that *L.W.* involved a challenge to a medical regulation, which the court determined classified based on specific medical procedures, not sex. *See* L.E.'s Supplemental Brief ("PSB"), Dkt. 102, at 2, 4. L.E.'s supplemental brief has already explained (at 2, 4-5) why this was central to the level of scrutiny employed in *L.W.*, and why the analysis in that case does not apply to a case like this one, which involves assignment to a specific sex-segregated category, where heightened scrutiny clearly applies.

Defendants assert (at 1) that under *L.W.*, "[s]ex-based discrimination occurs only when the government uses 'sex classifications to bestow unequal treatment on men and women.'" This ignores *L.W.*'s recognition that "States may not permit sex-based discrimination . . . on the assumption that men as a group and women as a group would be disadvantaged to a similar degree," 83 F.4th at 482, as well as *L.W.*'s citation for this point to *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), which held that sex-based peremptory challenges violated the Equal Protection Clause, *id.* at 129, even though "the system as a whole [wa]s evenhanded," so that

"for every man struck by the government petitioner's own lawyer struck a woman," *id.* at 159-160 (Scalia, J., dissenting). *See also Powers v. Ohio*, 499 U.S. 400, 410 (1991) (explicit facial classifications do not become legitimate "on the assumption that all persons suffer them in equal degree). Here, the fact that transgender girls are also excluded from girls' teams based on their birth-assigned sex does not mean that excluding transgender boys like L.E. from boys' teams based on their birth-assigned sex is not subject to heightened scrutiny.

Contrary to Defendants' suggestion (at 4), L.E. never argued that the mere use of sex-based terms (as a statute barring "female genital mutilation" might do) triggers heightened scrutiny. Instead, and as discussed in his opening supplemental brief (at 4-5), SB 228 does not just use "sex-related language"; rather, it mandates that team assignments turn solely on birth-assigned sex, an assignment that constitutes a facial sex classification.

Finally, Defendants cite (at 6) three Supreme Court cases for the proposition that classifications recognizing "the 'enduring' 'physical differences between men and women'" are lawful. But the cases Defendants cite *all* applied heightened scrutiny. *See Michael M. v. Superior Court*, 450 U.S. 464, 474 n.10 (1981) (describing "the issue presented here" as "whether the statute is substantially related to the prevention of teen pregnancy"); *Nguyen v. INS*, 533 U.S. 53, 68 (2001) ("Having concluded that facilitation of a relationship between parent and child is an important governmental interest, the question remains whether the means Congress chose to further its objective . . . substantially relate to that end."); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (similar). These cases underscore the lack of a "biological differences" carve-out to the rule that "'all gender-based classifications today' warrant 'heightened scrutiny.'" *Virginia*, 518 U.S. at 555. Defendants do not explain how their reliance on cases applying

2

heightened scrutiny supports the proposition that this Court should not apply heightened scrutiny.

### B. SB 228 Fails Any Level Of Scrutiny

Even under rational basis review, SB 228 is unconstitutional. In arguing otherwise, Defendants point (at 10) to four supposed interests the law advances. Two of these interests—"protect[ing] opportunities for girls in interscholastic athletics" and "reduc[ing] the risk of injury"—underscore the *irrationality* of SB 228's application to L.E. As a transgender boy, L.E. wants to compete on the boys' interscholastic golf team. By definition, a student trying to compete on a boys' team does not reduce opportunities for girls to participate in interscholastic athletics. *See* L.E. Opening SJ Brief ("POB"), Dkt. 51, at 16-17. Similarly, the only evidence in the record addressing purported safety interests involves the participation of transgender girls competing on girls' sports teams in contact sports. *See* L.E. Resp. SJ Brief ("PRB"), Dkt. 66, at 23-24. Golf, however, is indisputably a non-contact sport, *id.* at 23, and, again, L.E. seeks to compete on a boys' team, not a girls' team. The application of SB 228 to L.E. being "so far removed from [these] particular justifications" forecloses Defendants from relying on the purported opportunity and safety rationales to satisfy even rational-basis review. *Romer v. Evans*, 517 U.S. 620, 635 (1996).

Even if the Court believes SB 228's exclusion of transgender girls from girls' teams rationally relates to the asserted opportunity and safety interests (a proposition L.E. strongly disputes), SB 228's application to L.E. would still be unconstitutional. Defendants posit (at 10) that a law satisfies rational-basis review if it is rational on the "class-based level," and need not be rational on a "person-by-person" basis. *See* DSB 10 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 86 (2000)). Whatever the merits of that statement of the law, this is not a question

3

of some individuals being exceptions to a rational rule; it does not rationally further the goals of promoting interscholastic opportunities of cisgender girls to compete on girls' sports teams or protecting cisgender girls from injury to exclude *any* transgender boys from boys' sports teams.

Defendants' other two asserted interests (at 10)—"clarify[ing] the meaning of 'gender'" and "convey[ing] an educational message on the meaning of 'sex' and 'gender'"—fare no better. Defendants ask the Court to conclude that the Legislature sought to accomplish these educational goals through a law related to team assignments in interscholastic athletics, which affect only a subset of students such that most students would have no awareness of it. It is simply "impossible to credit" that notion given how "far removed" SB 228's means are from its purported ends. *Romer*, 517 U.S. at 635. Moreover, while the Legislature is free to convey educational messages, it may not do so through discrimination against students.

## II. SB 228 VIOLATES TITLE IX

Defendants' efforts to apply *L.W.* to L.E.'s Title IX claim lack merit. *See* PSB at 6-7 (explaining why *L.W.* does not undermine L.E.'s Title IX claim and why the reasoning of *Bostock v. Clayton County*, 140 S.Ct. 1731 (2020), is fully applicable to Title IX even after *L.W.*).

First, Defendants suggest *L.W.* held that the reasoning of *Bostock v. Clayton County*, 140 S.Ct. 1731 (2020), could not apply outside Title VII. That is not the case. As Defendants noted, *L.W.*'s holding was that "*Bostock*'s 'text-driven reasoning' does not apply *in the Equal Protection context*." DSB 5 (emphasis added). That holding stemmed from a focus on the textual differences between Title VII and the Equal Protection Clause. These substantial differences in language do not exist between Title VII and Title IX.

Defendants also invoke (at 12) two cases *L.W.* cited in dicta, but neither of those speaks to the issues in this litigation. One case merely said that "it does not follow that principles

4

announced in the Title VII context *automatically* apply in the Title IX context." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) (emphasis added). When it comes to *Bostock*'s reasoning regarding but-for causation, L.E. has already explained (PSB 6) why the text of those statutes suggests they should be read the same way in this respect. Defendants, on the other hand, have not grappled with this textual overlap at all. As for the other case Defendants cite, it merely recognized that *Bostock* did not itself decide whether its reasoning applied beyond Title VII and (relatedly) that *Bostock* was not a basis to overturn prior on-point precedent squarely addressing the Age Discrimination in Employment Act (the statute in question in that case). *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021).

Next, Defendants claim that *Bostock* should not apply to Title IX because while Title VII supposedly bars all discrimination on the basis of sex, Title IX expressly allows sex-separation in certain contexts, including athletics. Title VII's reach, however, is not so categorical. Just as Title IX has certain carveouts to its broad non-discrimination mandate, so too does Title VII. *See, e.g.*, *Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) ("Under § 703(e)(1) of Title VII, an employer may discriminate on the basis of . . . sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.'" (quoting 42 U.S.C. § 2000e–2(e)(1))); *Dothard v. Rawlinson*, 433 U.S. 321, 336-337 (1977) ("On the basis of that evidence, we conclude that the District Court was in error in ruling that being male is not a bona fide occupational qualification for the job of correctional counselor in a 'contact' position in an Alabama male maximum-security penitentiary.") *L.W.*, in fact, specifically invoked "Title VII's many defenses" as a reason to not apply *Bostock* to the Equal Protection Clause. 83 F.4th at 485.

Finally, Defendants claim (at 13) that because Title IX allows sex-segregated sports teams, it by definition cannot violate Title IX to bar L.E. from the boys' team. For support, they quote an opinion from another judge in this District holding that "[a]ny argument that the statute merely allows for the existence of separate restrooms, but does not allow schools to limit access to the restroom to the sex for which it is designated is untenable and appears to contradict the very purpose of allowing separate facilities," *D.H. ex rel. A.H. v. Williamson Cty. Bd. of Educ.*, 638 F. Supp. 3d 821, 835 (M.D. Tenn. 2021). With respect, *D.H.* misunderstands the relevant inquiry and so is not persuasive. The question is not whether boys need to use the sex-segregated bathroom designated for boys (or, in this case, whether boys need to participate on the sex-segregated team designated for boys). What matters is whether excluding a transgender boy like L.E. from the boys' team constitutes discrimination based on sex in violation of Title IX. *See Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020). For all purposes relevant to high school golf, L.E. is similarly situated to his cisgender boy classmates. *See* POB at 11; PRB at 15-16. Yet unlike those classmates, L.E. is barred from participating on the boys' golf team for the sole reason that he was assigned the sex of birth at female. This "discrimination" "on the basis of sex" is forbidden by Title IX. 20 U.S.C. § 1681(a).[1]

---

[1] L.E.'s opening supplemental brief cited (at 6) *Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023), as an example of a case "applying *Bostock*'s reasoning to Title IX in the sex-segregated interscholastic sports team context." That citation inadvertently misstated what *Hecox* held. The Ninth Circuit's application of *Bostock* in *Hecox* was actually made in the context of an Equal Protection Clause claim. *See id.* at 1030. L.E. recognizes that under *L.W.*, this Court may not similarly apply *Bostock* to his Equal Protection Claim, but L.E. again notes that he is preserving the argument that *L.W.*'s analysis on this point was wrong. The Ninth Circuit has held (in a different case addressing changes to a state Medicaid program) that *Bostock*'s reasoning applies to Title IX. *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

## CONCLUSION

L.E.'s motion for summary judgment should be granted and Defendants' motions for summary judgment should be denied.

| | |
|---|---|
| Dated: October 27, 2023 | Respectfully submitted, |
| | /s/ Alan Schoenfeld |

Leslie Cooper (*pro hac vice*)
L. Nowlin-Sohl (*pro hac vice*)
Taylor Brown (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lcooper@aclu.org
lnowlin-sohl@aclu.org
tbrown@aclu.org

Tara L. Borelli (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
1 West Court Square, Suite 105
Decatur, GA 30030-2556
Tel: (404) 897-1880
Fax: (404) 506-9320
tborelli@lambdalegal.org
ccharles@lambdalegal.org

Sasha Buchert (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION
   FUND INC.
1776 K Street NW, 8th Floor
Washington, DC 20006-5500
Tel: (202) 804-6245
sbuchert@lambdalegal.org

Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street, 45th Floor
New York, NY 10007
Tel: (212) 937-7294
alan.schoenfeld@wilmerhale.com

Stella Yarbrough (No. 33637)
Lucas Cameron-Vaughn (No. 036284)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Tel: (615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org

Jennifer Milici (*pro hac vice*)
Emily L. Stark (*pro hac vice*)
Samuel M. Strongin (*pro hac vice*)
John W. O'Toole (*pro hac vice*)
Britany Riley-Swanbeck (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6000
jennifer.milici@wilmerhale.com
emily.stark@wilmerhale.com
samuel.strongin@wilmerhale.com
john.o'toole@wilmerahle.com
britany.riley-swanbeck@wilmerhale.com

***Attorneys for Plaintiff L.E., by his next friends and parents, Shelley Esquivel and Mario Esquivel***

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, a true and correct copy of the foregoing was served on the below counsel for Defendants, via the Court's ECF/CM system.

| | |
|---|---|
| Stephanie A. Bergmeyer<br>Senior Assistant Attorney General<br>Office of Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Stephanie.Bergmeyer@ag.tn.gov<br>(615) 741-6828 | David M. Sanders<br>Senior Deputy Law Director, Knox County<br>Suite 612, City-County Building<br>400 Main Street<br>Knoxville, TN 37902<br>David.Sanders@knoxcounty.org<br>(865) 215-2327 |
| J. Matthew Rice<br>Joshua Daniel Minchin<br>Assistant Solicitor General<br>Office of Tennessee Attorney General and Reporter<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Matt.Rice@ag.tn.gov<br>(615) 532-6026 | Jessica Jernigan-Johnson<br>Deputy Law Director, Knox County<br>Suite 612, City-County Building<br>400 Main Street<br>Knoxville, TN 37902<br>Jessica.Johnson@knoxcounty.org<br>(865) 215-2327 |

/s/ Alan Schoenfeld
Alan Schoenfeld