# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| L.E., by next friends and parents, SHELLEY ESQUIVEL and MARIO ESQUIVEL, <br><br> Plaintiff, <br><br> v. <br><br> BILL LEE, in his official capacity as Governor of Tennessee; et al., <br><br> KNOX COUNTY BOARD OF EDUCATION a/k/a KNOX COUNTY SCHOOL DISTRICT; et al., <br><br> Defendants. | No. 3:21-cv-00835 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br><br> Magistrate Judge Alistair E. Newbern |

## DEFENDANTS' SUPPLEMENTAL RESPONSE BRIEF

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    *L.W.* Sinks L.E.'s Equal Protection Claim. ...................................................... 2

    II.   *L.W.* Defeats L.E.'s Title IX Claim. ................................................................ 5

CONCLUSION ..................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ................................................................................ 4, 7

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ......................................................................................... 1, 2

*D.H. v. Williamson Cnty. Bd. of Educ.*,
  638 F. Supp. 3d 821 (M.D. Tenn. 2022) ............................................................... 4, 7

*D.H. v. Williamson Cnty. Bd. of Educ.*,
  2023 WL 6302148 (M.D. Tenn. Sept. 27, 2023) ...................................................... 4

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) .................................................................................................. 5

*L.W. ex rel. Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) .............................................................................. passim

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ................................................................................ 5, 6

*Pelcha v. MW Bancorp, Inc.*,
  988 F.3d 318 (6th Cir. 2021) ..................................................................................... 6

*Smith v. City of Salem*,
  378 F.3d 566 (6th Cir. 2004) ..................................................................................... 2

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ............................................................................................... 5

**Statutes and Regulations**

20 U.S.C. § 1681(a) ........................................................................................................ 6

20 U.S.C. § 1686 ............................................................................................................ 6

42 U.S.C. § 2000e-2 ....................................................................................................... 5

34 C.F.R. § 106.33 .......................................................................................................... 6

34 C.F.R. § 106.34 .......................................................................................................... 6

34 C.F.R. § 106.37 .......................................................................................................... 6

34 C.F.R. § 106.41 .......................................................................................................... 6

# INTRODUCTION

The decision in *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), confirms that L.E. has no viable path to victory in this case. The Sixth Circuit squarely refuted the theories underlying L.E.'s Equal Protection and Title IX claims. And L.E.'s Supplemental Brief—understandably but unpersuasively—resists those holdings.

For the Equal Protection claim, L.E.'s Supplemental Brief attempts to merge sex and transgender discrimination, seeking the benefits of a challenge to a sex classification (heightened scrutiny) without the drawbacks (the sweeping implications of eliminating sex-separated sports). But *L.W.* forecloses that maneuvering. *L.W.* holds that intermediate scrutiny applies only when a plaintiff challenges the government's use of "sex classifications to bestow unequal treatment on men and women." 83 F.4th at 483. "[A]reas of regulation that affect transgender individuals"— like "[s]ports teams and sports competitions"—receive more limited rational basis review. *Id.* at 486. That leaves L.E. two options: a whole-hog challenge to sex-separated sports with the possibility of heightened review or a transgender discrimination claim with rational basis review. And L.E. has disavowed any challenge to the separation of sports based on sex. L.E. Resp. to MSJ, D.E. 66, at 2047. Rational basis thus applies, and the challenged policies are rational.

For the Title IX claim, L.E. runs into a similar bind. L.E. has acknowledged that "Title IX[] allow[s] for sex-segregated sports teams," *id.*, at 2069, but nonetheless argues that the transgender discrimination claim could proceed under theories relying on supposed stereotyping and the reasoning of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). But *L.W.* spurned both of those arguments. As a result, L.E. must now contend that Title IX allows for the *existence* of sex-separated sports teams but does not allow the *enforcement* of a sex-separated sports policy with transgender students. That argument cannot possibly carry the day.

The Court should adhere to *L.W.* and grant Defendants' motions for summary judgment.

1

# ARGUMENT

## I.     *L.W.* Sinks L.E.'s Equal Protection Claim.

*L.W.* sets a narrow path to intermediate scrutiny:  A plaintiff must challenge the government's use of "sex classifications to bestow unequal treatment on men and women."  83 F.4th at 483.  L.E. raises no such challenge.  And the Sixth Circuit rejected each of the roundabout arguments L.E. presses to obtain heightened review.

*L.W.* forecloses reliance on *Bostock* in the Equal Protection context.  *See* Defendants' Supp. Br., D.E. 101, at 2981.[1]  Specifically, the Sixth Circuit rejected an attempt to equate sex and transgender discrimination under *Bostock*'s but-for causation theory, which ignores the target of the alleged discrimination.  *See id.*; *L.W.*, 83 F.4th at 484-85.  While L.E.'s Supplemental Brief acknowledges that the Sixth Circuit "deemed the Supreme Court's holding in *Bostock* . . . inapplicable to equal protection claims," L.E. Supp. Br., D.E. 102, at 2998, it then reintroduces *Bostock*'s but-for test by arguing that heightened scrutiny applies because L.E. could participate on the "boy's golf team" if L.E. had a different "sex assigned at birth."  *Id.* at 2999-3000.  That argument mirrors *Bostock*'s inquiry into whether "changing the employee's sex would have yielded a different choice by the employer."  140 S. Ct. at 1741.  L.E. is certainly free to preserve an argument that *L.W.* was "wrongly decided," L.E. Supp. Br., D.E. 102, at 2996, but this Court should reject the invitation to defy *L.W.* by adopting *Bostock* in all but name.

*L.W.* also forecloses L.E.'s sex-stereotyping argument.  *See* Defendants' Supp. Br., D.E. 101, at 2981-82, 2990.  The Sixth Circuit declared that "[r]ecognizing and respecting biological sex differences does not amount to stereotyping."  *L.W.*, 83 F.4th at 486.  And it held that the sex-stereotyping decision in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), does not "extend . . .

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

beyond claims about discrimination over dress or appearance" and certainly "did not . . . create a new rule for transgender discrimination." *L.W.*, 83 F.4th at 486. L.E.'s Supplemental Brief does not even acknowledge *L.W.*'s stereotyping analysis—let alone explain how L.E.'s argument survives the Sixth Circuit's cabining of *Smith*.

With the *Bostock* and stereotyping arguments shut down, L.E. blurs the line between a sex-discrimination and transgender-discrimination claim. L.E. repeatedly claims that "heightened scrutiny applies" because the challenged law and policy "on [their] face classif[y] students based on sex." L.E. Supp. Br., D.E. 102, at 2999; *see also id.* at 2996, 3000. But L.E. *does not challenge that classification*. In fact, L.E. disavows any challenge to the sex-separation of sports. L.E. Resp. to MSJ, D.E. 66, at 2047. While it is L.E.'s prerogative not to challenge the separation of sports based on sex, the absence of that challenge forecloses the only avenue for applying intermediate scrutiny after *L.W.*

It is not enough, as L.E. suggests, for a challenge to be tangential or related to sex-separation. If it were, then *L.W.* would not have stated that "areas of regulation that affect transgender individuals"—like "bathrooms," "locker rooms," "[s]ports teams and sports competitions"—should not be removed from the "arena of public debate and legislative action" through heightened review applied by "one [unelected] Supreme Court." 83 F.4th at 486-87. Each and every one of those examples involves a restriction on transgender students tangential to sex separation, yet *L.W.* stated they should *not* face heightened review. *Id. L.W.* instead limited sex-discrimination claims to those where the government has used "sex classifications to bestow unequal treatment on men and women." *Id.* at 483.

The reality is that L.E. alleges transgender discrimination, not sex discrimination. If the law explicitly provided, "Transgender persons cannot play on the sports team that matches their

3

gender identity," the discrimination at issue would unquestionably turn on transgender status. And that is exactly the argument L.E. presses here: The exclusion of a transgender person from the sports team that matches their identity violates the Equal Protection Clause. The fact that L.E. phrases the argument using "sex-related language," rather than referring to transgender status, does not transform L.E.'s transgender-discrimination claim into one for sex discrimination. *L.W.*, 83 F.4th at 482. Holding otherwise would implausibly permit any transgender plaintiff to obtain heightened review and evade *L.W.*'s holding with mere pleading games.

L.E. claims that "[o]ther courts have recognized that . . . assignments of transgender people to a particular sex-segregated category" warrants heightened review, invoking *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) and *D.H. v. Williamson Cnty. Bd. of Educ.*, 2023 WL 6302148 (M.D. Tenn. Sept. 27, 2023). L.E. Supp. Br., D.E. 102, at 2999-3000. That skin-deep argument fails on multiple fronts. For one, neither the Eleventh Circuit nor the Middle District of Tennessee can override the Sixth Circuit's limited view of what constitutes sex-discrimination and its clear statement that heightened review should not apply to "areas of regulation that affect transgender individuals"—like "[s]ports teams and sports competitions." *L.W.*, 83 F.4th at 486. For two, in *Adams* and *D.H.*, the courts looked to whether the practice of separating bathrooms based on sex passed constitutional review; that is, they applied intermediate scrutiny because they analyzed the constitutionality of the separation itself. *See Adams*, 57 F.4th at 808 (noting that the case is about "the legality of separating bathrooms by sex"); *D.H. v. Williamson Cnty. Bd. of Educ.*, 638 F. Supp. 3d 821, 834 (M.D. Tenn. 2022) (analyzing the constitutionality of "separate bathrooms for the biological sexes"); *D.H.*, 2023 WL 6302148 at *4 (applying intermediate scrutiny after characterizing the challenge as being to the "classification[] based on sex"). And, again, L.E. has disavowed any challenge to sex-separated sports here. For

4

three, the *D.H.* opinion L.E. cites came out *before* the final *L.W.* opinion.

Put simply, *L.W.* resolves the proper tier of review: rational-basis. And L.E. cannot carry the "burden to negative every conceivable basis which might support" the challenged policies. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (internal quotations and citation omitted). This any-conceivable-basis test applies whether a plaintiff raises a facial or as-applied challenge. *See* Defendants' Supp. Br., D.E. 101, at 2986. And, regardless, multiple asserted rationales apply to L.E. *Id.*; *see also* Defendants' Resp. to MSJ, D.E. 70, at 2129-32. This is not the rare case calling for invalidation based on rational-basis review. *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018).

The Equal Protection claim fails as a matter of law.

## II.   *L.W.* Defeats L.E.'s Title IX Claim.

The Sixth Circuit's analysis in *L.W.* also refutes L.E.'s Title IX arguments.

*First*, *L.W.* makes clear that *Bostock* does not apply in the Title IX context. The Sixth Circuit explicitly held that *Bostock*'s "reasoning applies *only to Title VII*." *L.W.*, 83 F.4th at 484 (emphasis added). And it explicitly recognized that "Title VII['s] analysis does not apply to Title IX." *Id.* (citing *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021)). That L.E. ignores these statements does not erase them from the opinion. L.E. Supp. Br., D.E. 102, at 3001-02. Whether L.E. acknowledges it or not, *L.W.* resolves any debate on the applicability of *Bostock*.

Regardless, L.E.'s first-principles argument goes nowhere. L.E. contends that Title VII's ban on discrimination "because of sex" is "materially identical" to Title IX's limits on "discrimination" "on the basis of sex." *Id.* at 3001. But that argument completely ignores the "marked difference in application of the [two] anti-discrimination principle[s]." *L.W.*, 83 F.4th at 485. While Title VII's anti-discrimination provision prohibits certain actions "because of . . . sex," full stop, 42 U.S.C. § 2000e-2, Title IX's anti-discrimination provision explicitly allows separation

5

"on the basis of sex" in numerous circumstances. 20 U.S.C. § 1681(a)(1)-(9); *see also, e.g.*, 34 C.F.R. §§ 106.33, 106.34, 106.37, 106.41. Indeed, Congress stated that Title IX's anti-discrimination provision shall not "be construed to prohibit . . . separat[ion]" of the sexes in certain facilities. 20 U.S.C. § 1686. It was these very distinctions that led the Sixth Circuit in *Meriwether* to recognize that discrimination under "Title VII differs from Title IX." 992 F.3d at 510 n.4.

L.E. fares no better in claiming that *Bostock* should apply because "Sixth Circuit precedent treats the[] two phrases ["because of sex" and "on the basis of sex"] the same." L.E. Supp. Br., D.E. 102, at 3001. For one, the "precedent" L.E. cites is a chain of attenuated cases applying a but-for causation test based on repealed language in the Americans with Disabilities Act. *Id*. at 3001. More importantly, though, the Sixth Circuit has held that *Bostock* does not apply even when statutes use *the same exact "because of" language used in Title VII*. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (declining to apply *Bostock* to the "because of" antidiscrimination provision in the Age Discrimination in Employment Act). *Pelcha* and *L.W.* leave no doubt that, when the Sixth Circuit says "*Bostock* extends no further than Title VII," it means it. *Id.*; *L.W.*, 83 F.4th at 484.

*Second*, *L.W.* rebuffs L.E.'s Title IX sex-stereotyping argument. The Sixth Circuit's decision unequivocally rejects the notion that restrictions imposed on transgender persons constitute sex-stereotyping under the Equal Protection Clause, *see supra*, at 2-3, and L.E.'s Supplemental Brief provides no argument that sex stereotyping works differently in the Title IX context. *See* L.E. Supp. Br., D.E. 102, at 3001-02. That is not surprising. L.E.'s prior briefing pinned the Title IX sex-stereotyping claim to *Smith*—an Equal Protection case. L.E. MSJ Memo, D.E. 51, at 560. Put simply, L.E.'s Title IX stereotyping argument must rise or fall with the application of *Smith*, and it falls. *L.W.*, 83 F.4th at 485-86.

6

With both asserted Title IX arguments refuted, L.E.'s Supplemental Brief muddies the waters as to what exactly the claimed Title IX discrimination is. At one point, the Brief claims that "sex-segregated categories indisputably constitute[] differential treatment on the basis of sex." L.E. Supp. Br., D.E. 102, at 3001. But that sounds like a challenge to the practice of maintaining "sex-segregated" sports teams. Under that theory, L.E. must confront the statutory and regulatory framework contradicting the notion that separation constitutes discrimination under Title IX. And L.E. must acknowledge the implications of the asserted position—a statutory requirement that State and localities "commingl[e] . . . the biological sexes" in interscholastic sports. *Adams*, 57 F.4th at 819 (Lagoa, J., specially concurring). Yet, L.E. addresses neither.

At another point, L.E.'s Supplemental Brief seems to admit that Title IX allows States and localities to "maintain[] sex-segregated sports teams." L.E. Supp. Br., D.E. 102, at 3000 n.2. That recognition comports with L.E.'s prior briefing, which stated that "Title IX[] allow[s] for sex-segregated sports teams" but contended that enforcing a sex-separated sports policy to "prohibit[] [L.E.] from playing on the boys' team" constitutes discrimination under Title IX. L.E. Resp. to MSJ, D.E. 66, at 2069. That argument makes no sense though. If it is not discrimination to maintain sex-separated sports teams, then it cannot be discrimination to enforce the sex-separation policy. That is, "[a]ny argument that the statute merely allows for the existence of separate [sports teams], but does not allow schools to limit access to the [team] to the sex for which it is designated is untenable and appears to contradict the very purpose of allowing separate" sports teams. *D.H.*, 638 F. Supp. 3d at 835. The Court should reject L.E.'s contradictory mental gymnastics.

The Title IX claim fails as a matter of law.

## CONCLUSION

This Court should grant Defendants' motions for summary judgment and enter judgment for Defendants.

7

Case 3:21-cv-00835   Document 105   Filed 10/27/23   Page 10 of 12 PageID #: 3030

Respectfully submitted,

| | |
|---|---|
| DAVID M. SANDERS, BPR # 016885<br>Senior Deputy Law Director | JONATHAN SKRMETTI<br>Attorney General and Reporter |
| JESSICA JERNIGAN-JOHNSON,<br>BPR # 032192<br>Deputy Law Director | /s/*J. Matthew Rice*<br>J. MATTHEW RICE, BPR # 040032<br>Associate Solicitor General |
| | JOSHUA D. MINCHIN, BPR # 038746<br>Honors Fellow, Office of the Solicitor General |
| City-County Building<br>400 Main Street<br>Knoxville, Tennessee 37902<br>Jessica.Johnson@knoxcounty.org<br>(865) 215-2327 | Office of Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Matt.Rice@ag.tn.gov<br>(615) 532-6026 |
| *Counsel for Defendants, Knox County Board of Education, Knox County Schools, and Dr. Jon Rysewyk* | *Counsel for Governor Lee, Commissioner Reynolds, Dr. Morrison, and the individual members of the Tennessee State Board of Education, in their official capacities, and the Tennessee State Board of Education* |

8

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this Supplemental Response Brief has been served through the e-filing system on October 27, 2023, to:

Leslie Cooper
Lisa Nowlin-Sohl
Taylor Brown
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004

Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION FUND INC.
1776 K St. NW, 8th Floor
Washington, DC 20006-5500

Tara L. Borelli
Carl S. Charles
LAMBDA LEGAL DEFENSE AND EDUCATION FUND INC.
1 West Court Sq., Ste. 105
Decatur, GA 30030-2556

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich St., 45th Floor
New York, NY 10007

Britany Riley-Swanbeck
Emily L. Stark
Samuel M. Strongin
Jennifer Milici
John W. O'Toole
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006

Matthew D. Benedetto
WILMER & LEE, P.A.
100 Washington St., Ste. 200
Huntsville, AL 35804

Stella Yarbrough
Lucas Cameron-Vaughn
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212

David M. Sanders
Senior Deputy Law Director
Jessica Jernigan-Johnson
Deputy Law Director
Knox County, Tennessee
400 W. Main St., Suite 612
City-County Building
Knoxville, TN 37902

/s/ J. Matthew Rice
J. Matthew Rice